# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3737

———————

United States of America,

   Appellee,

    v.

David T. Mark,

   Appellant.

      Appeal from the United States
      District Court for the
      District of Nebraska.

———————

Submitted: June 23, 2005
Filed: October 4, 2005

———————

Before ARNOLD, McMILLIAN, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

David T. Mark pleaded guilty to possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and was sentenced to a term of 30 months' imprisonment, to be followed by three years of supervised release with special conditions. Mark appeals his sentence, arguing that the district court erred in rejecting his motion for downward departure from the sentencing guidelines and abused its discretion by assigning certain conditions of supervised release. We find no error in the term of imprisonment imposed by the district court. Because we find the record insufficient to uphold one special condition of supervised release

concerning access to the Internet, however, we remand the case for further proceedings.

I.

Mark's sole argument regarding the length of his incarceration relates to the calculation of the appropriate sentencing range under the United States Sentencing Guidelines, a range that is now advisory under the decision in *United States v. Booker*, 125 S. Ct. 738 (2005). The district court calculated a sentencing range of 27 to 33 months' imprisonment, based on the applicable offense level and criminal history, (S. Tr. at 29-30), but Mark argued that his "involuntary intoxication," resulting from psychotropic medication that he took to treat a bipolar condition, was a mitigating circumstance that the Sentencing Commission did not adequately take into consideration when it formulated the guidelines. He asserted that his prescription for the drug was tripled before the commission of his offense, and that the higher dosage pushed him into a state of mania that made it impossible for him to control his addiction.

The district court ruled that it was not permitted to consider a departure based on Mark's use of medication, because his involuntary intoxication claim amounted to an assertion of "diminished capacity," and a federal statute enacted in 2003 specifically prohibited departures based on "diminished capacity" in child pornography cases. *See* Pub. L. No. 108-21, § 401(b), 117 Stat. 650, 669 (2003); USSG § 5K2.13. The court explained that "Congress' mandate to me precludes that defense, because it still fits in the category of diminished capacity because frankly someone's mental illness, or someone's involuntary intoxication, are both unintentional," and that "Congress has precluded me from downwardly departing for diminished capacity for any basis." (S. Tr. at 54-55).

-2-

Mark argues on appeal that the district court erred in refusing to entertain his motion for downward departure because "involuntary intoxication" differs from diminished capacity, and involuntary intoxication is therefore still available as a basis for departure from the guidelines in an appropriate case. Reviewing the district court's interpretation and application of the guidelines *de novo*, *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005), we hold that the district court properly concluded that Mark's proposed departure was forbidden.

Section 5K2.13 provides that a downward departure may be warranted if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." The Sentencing Commission has defined "significantly reduced mental capacity" to mean that "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." USSG § 5K2.13, comment. (n.1). The guidelines explicitly disallow such a departure where the defendant has been convicted of an offense involving child pornography. USSG § 5K2.13.

Mark concedes that if the "state of mania" that allegedly contributed to his offense were caused by bipolar disorder, then it would constitute "diminished capacity" on which a departure may not be based. (S. Tr. at 45). He asserts, however, that because the alleged "state of mania" was caused by medication (which he says was improperly prescribed), he is eligible for a departure.

We agree with the district court that Mark, in seeking to distinguish his claim of "involuntary intoxication" from a claim of "diminished capacity," has invited us to join in "dancing on the head of a pin," and we reject the proffered distinction. The policy statement on "diminished capacity" focuses not on the *cause* of the defendant's diminished capacity, but on the defendant's ultimate mental state – that is, whether

he in fact had a "significantly impaired ability" to understand the wrongfulness of his behavior or to exercise the power of reason, regardless of the cause. The policy statement implicitly confirms that "involuntary intoxication" is within the scope of "diminished capacity" when it directs that a court may not depart when the defendant's reduced mental capacity "was caused by the *voluntary* use of drugs or other intoxicants." USSG § 5K2.13 (emphasis added). Conversely, with respect to offenses not categorically excluded by the 2003 statute, a court *may* depart pursuant to § 5K2.13 when a defendant's reduced mental capacity is caused by *involuntary* use of drugs. When Congress did away with the departure in child pornography cases, however, it prohibited the sort of reduction sought by Mark.

The district court, applying the then-mandatory sentencing guidelines, properly sentenced Mark within the guideline range of 27 to 33 months' imprisonment. Mark has not argued on appeal that the district court's imposition of sentence constituted plain error warranting relief under *Booker* and *United States v. Pirani*, 406 F.3d 543 (8th Cir. 2005) (en banc), *petition for cert. filed*, (U.S. July 27, 2005) (No. 05-5547). Therefore, we affirm that portion of the judgment imposing a term of 30 months' imprisonment.

II.

Mark also argues that the special supervised release conditions imposed by the district court are inconsistent with 18 U.S.C. § 3583(d). The statute provides, *inter alia*, that a district court may order a condition of supervised release beyond those listed in § 3583, provided that such a condition is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a), involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a), and is consistent with any pertinent policy statements issued by the Sentencing Commission. Among the purposes set forth in § 3553(a) are deterrence, protection of the public, and effective

provision, in the most effective manner, of needed educational or vocational training, medical care, or other correctional treatment to the defendant.

## A.

The first special condition about which Mark complains requires that he have no contact with, or reside with, any children under 18 years of age, including his own children, unless approved in advance and in writing by the probation office. Mark asserts that there is nothing in the record indicating that he is a danger to his own or other children and that this condition is "simply too great a restriction on the Defendant's liberty to be allowed." (Appellant's Br. at 13). He further argues that the condition improperly delegated a judicial function to the probation office by allowing a probation officer to determine whether he has contact with his children.

Mark explained at sentencing that he would prefer a condition that he must follow any and all orders with respect to his children from the District Court of Douglas County, Nebraska, in which he was engaged in relevant litigation. His counsel explained that "What I don't want to see, Judge, is the probation office all of a sudden double guessing the District Court of Douglas County, Nebraska, or its orders, and Mr. Mark finding himself at odds as to what to do." (S. Tr. at 57). The condition ultimately imposed required the probation office to consult with treatment providers and act "consistent with the orders of the Douglas County District Court or the Separate Juvenile Court of Douglas County." (S. Tr. at 72). The district court clarified that "once the Douglas County District Court, the Separate Juvenile Court, makes a decision with respect to contact, then that will be the controlling document, but the court is not giving up its jurisdiction as well, because I don't know how long the county court might have jurisdiction." (*Id.*).

In essence, the district court gave Mark what he requested: the probation office was instructed to follow the lead of the county court insofar as Mark's visitation

rights were concerned. Requiring Mark to obtain prior approval is a reasonable mechanism to promote compliance and to ensure that Mark's contact with minors is reasonably limited to appropriate situations. Mark has a history of violating conditions of release (he was on probation for a previous child pornography conviction when he committed the instant offense), and the record reflects that during his youth, Mark engaged in sexual exploration with a female family member who was a minor. (PSR ¶ 104). Under these circumstances, the district court did not abuse its discretion in imposing the condition.

Mark's argument that the district court impermissibly delegated the judicial function to the probation office is also unconvincing. In *United States v. Kent*, 209 F.3d 1073, 1079 (8th Cir. 2000), on which Mark relies, we held that where a court "explicitly stated it hoped it would not be 'riding herd' in the probation officer's decision to require Kent to undergo psychiatric treatment," the condition imposed was inconsistent with both Article III and U.S.S.G. § 5D1.3(b), because it was "entirely possible that Kent's probation officer, as opposed to the court, would retain and exercise ultimate responsibility over the situation." 209 F.3d at 1079. In this case, there is no such broad delegation. The district court provided ample guidance to the probation office by directing it to condition approval of Mark's contact with children on the decisions of the county court, and there is no indication that the court delegated ultimate responsibility over the situation to the probation officer.

B.

Mark next contends that two special conditions of supervised release, numbered 8 and 9, which prohibit him from using or having access to any online computer programs, and from using or possessing a computer, except under supervised work conditions and on a computer with no Internet connection, are "far too broad and involves too great a restriction on [Mark's] liberty than is reasonably related to any rehabilitation nor to serve the ends of protecting the public."

(Appellant's Br. at 15). Mark points out that he "is a computer consultant who earns his livelihood through the use of computers," and argues that the restrictions imposed would have a severe detrimental effect on his ability to hold a job and earn a living. (*Id.*). He argues that less restrictive alternatives exist that could satisfy the needs of the sentencing court. According to Mark, the district court could have addressed its concerns by ordering him to install filtering software that would block access to sexually-oriented websites and to permit the probation office unannounced access to verify that the software was functioning properly. This approach, in Mark's view, would allow him to make use of the Internet for employment purposes, but preclude him from abusing access.

Given Mark's repeated offenses of viewing child pornography over the Internet, a complete ban on Internet access is reasonably related to the statutory purposes of deterring criminal conduct and protecting the public from further crimes of the defendant. The more difficult question is whether the condition is overbroad – that is, whether it involves a "greater deprivation of liberty than is reasonably necessary" under the circumstances. On plain error review, we have upheld narrower bans on Internet access in cases involving offenders who committed crimes more serious than simple possession of child pornography. In *United States v. Fields*, 324 F.3d 1025 (8th Cir. 2003), we discerned no abuse of discretion (and thus, *a fortiori*, no plain error) in a condition that barred a defendant from having Internet access at his home, where the offense of conviction involved running a child pornography website for profit, and the defendant pointed to no specific negative impact on his educational or vocational training that would result from the condition. Similarly, in *United States v. Ristine*, 335 F.3d 692, 695-96 (8th Cir. 2003), we found no plain error where the district court barred the defendant from having Internet service at his residence, noting again that the defendant exchanged images with other Internet users, and thus "did more than merely possess child pornography." *Id.* at 696.

We observed in *Fields*, however, that "[a]ppellate courts have overturned conditions seen as overly restrictive, especially in cases involving simple possession of child pornography." 324 F.3d at 1027. And in *United States v. Crume*, No. 04-3181, 2005 WL 2124103 (8th Cir. Sep. 6, 2005), we recently held, in the case of a defendant whose criminal conduct involved only possession of child pornography, that a broad ban on access to computers and the Internet (without written consent of a probation officer) was not reasonably necessary. We concluded that the district court could "impose a more narrowly-tailored restriction on Mr. Crume's computer use through a prohibition on accessing certain categories of websites and Internet content and can sufficiently ensure his compliance with this condition through some combination of random searches and software that filters objectionable material." *Id*. at * 4.

Our decision in *Crume* is consistent with such opinions as *United States v. Sofsky*, 287 F.3d 122 (2d Cir. 2002), where the Second Circuit vacated a complete ban on Internet access, noting that "[c]omputers and Internet access have become virtually indispensable in the modern world of communications and information gathering," *id*. at 126, and *United States v. Freeman*, 316 F.3d 386 (3d Cir. 2003), which held with respect to a defendant convicted of possessing child pornography that "[t]here is no need to cut off Freeman's access to email or benign internet usage when a more focused restriction, limited to pornography sites and images, can be enforced by unannounced inspections of material stored on Freeman's hard drive or removable disks." *Id*. at 392. The court in *Freeman* distinguished a case in which it upheld a complete ban on Internet use by noting that the defendant in the previous case "used the internet to contact young children and solicit inappropriate sexual contact with them" – a use that was "harmful to the victims contacted and more difficult to trace than simply using the internet to view pornographic web sites." *Id*.; *see also United States v. Holm*, 326 F.3d 872, 877-78 (7th Cir. 2003) (holding that a prohibition on Internet access failed to satisfy § 3583(d)(2), because "such a ban renders modern life – in which, for example, the government strongly encourages

taxpayers to file their returns electronically, where more and more commerce is conducted on-line, and where vast amounts of government information are communicated via website – exceptionally difficult," and the defendant had a long history of working in computerized telecommunications, such that the special condition "could affect his future productivity and jeopardize his rehabilitation in violation of the command of § 3583(d)."); *United States v. White*, 244 F.3d 1199, 1206-07 & n.8 (10th Cir. 2001) (cautioning against an across-the-board prohibition on Internet access, which would bar a defendant "from using a computer at a library to do any research, get a weather forecast, or read a newspaper online," and explaining that filtering software, although not "completely effective" in 2001, might provide a reasonable method of preventing the defendant from viewing illegal content while allowing him to use the Internet legitimately).

As *Crume* and the decisions from other circuits illustrate, a complete ban on Internet access is difficult to justify as a least restrictive means of satisfying the statutory objectives of supervised release in the case of a defendant whose criminal conduct involved simple possession of child pornography. At a minimum, such a condition should be imposed only on a record that permits a thorough evaluation of other alternatives that might be sufficient to serve the statutory purposes of protecting the public and deterring future crimes. In this case, we believe the record is not sufficient to demonstrate that the complete prohibition on Internet access is reasonably necessary. The potential efficacy of a filtering program, for example, has not been explored. Whether such a program would likely be effective in preventing Mark from accessing illegal content cannot be judged on this record. Nor does the record show why the district court apparently believed that restrictions on time and place of Internet access, combined with regular monitoring and inspections by the probation office, would be inadequate to protect the public and deter future violations. *See Crume*, 2005 WL 2124103, at *4; *cf. Sofsky*, 287 F.3d at 126-27.

We reserve judgment on whether a complete ban on Internet access, in some case of a defendant involved in possessing child pornography, may be reasonably necessary within the meaning of § 3583(d)(2), particularly if a defendant is incorrigible and other alternatives are thoroughly considered but reasonably found to be ineffective. In this case, however, we conclude that the record is insufficiently developed to justify the condition, both with respect to evidence concerning potential alternatives and an explanation from the district court as to why less restrictive alternatives are inadequate.

\*     \*     \*

For the foregoing reasons, we vacate the special conditions of supervised release prohibiting access to any online computer programs, and prohibiting the use or possession of a computer with Internet access, and remand the case for further proceedings in accordance with this opinion.

_____