# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-4425

_____

United States of America,           *

                                *

          Appellee,        *

                                *      Appeal from the United States

     v.                    *      District Court for the

                                *      Western District of Arkansas.

James Hale Stewart,         *

                                *           [PUBLISHED]

          Appellant.      *

_____

Submitted: May 18, 2006
Filed: September 14, 2006

_____

Before BYE, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

James Hale Stewart pleaded guilty to two counts of a three-count indictment charging him with transmitting and possessing child pornography. See 18 U.S.C. §§ 2252A(a)(1) & 2252A(a)(5)(B) (2000). He now appeals the sentence imposed by the district court,[1] asserting a Sixth Amendment violation on the basis of the sentencing judge's fact-finding, see United States v. Booker, 543 U.S. 220, 244 (2005), and challenging the applicability of a five-level sentencing enhancement for

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

"engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor," <u>see</u> U. S. Sentencing Guidelines Manual (USSG) § 2G2.2(b)(5) (2004).  We affirm.

## I.

Stewart lived in Bentonville, Arkansas, with his girlfriend, D.L., and her ten-year old daughter, K.L.  He was arrested after being identified by two undercover law enforcement officers working on separate investigations of child pornography on the Internet.  In November 2004, an undercover officer with the Internet Crimes Against Children Task Force in Wichita, Kansas, noticed an individual in a Yahoo online chat room titled "PAC's Preteen Pics and Post," identifying himself has "daddiez_hands@yahoo.com" (hereinafter "daddiez_hands") and posting numerous website links depicting images of minors engaged in sexually explicit conduct.  Using his undercover identity, the officer contacted daddiez_hands by initiating an Internet chat conversation, during which daddiez_hands identified himself as Jim, admitted posting the links, and stated that he collected such material on his computer.  Daddiez_hands bragged about previous sexual assaults he had committed against an eight-year old girl and that he was dating a woman with a ten-year old girl, whom he was grooming for sexual encounters.

Daddiez_hands gave the undercover officer his home telephone number through which law enforcement identified a Bentonville, Arkansas, address.  The Task Force referred the matter to the Federal Bureau of Investigation (FBI) office in Fayetteville, Arkansas, which confirmed that this address was Stewart's residence.  Also, Stewart's driver's license photograph matched the photo display in the daddiez_hands Yahoo profile.

In a parallel investigation two months later, in January 2005, a second undercover officer in Kansas observed daddiez_hands in an Internet chat room posting

links to websites that contained images of minors engaged in sexually explicit conduct. During an Internet instant message conversation with the undercover officer, daddiez_hands sent more links to child pornography websites as well as pictures that daddiez_hands claimed were of his ten-year old stepdaughter (referring to K.L.). Daddiez_hands told the officer that he had fondled K.L. in a sexual manner, and one of the images depicted K.L. face down on a bed clad in a shirt and underclothing with Stewart's hand appearing to touch her buttocks and panties. Within the week, daddiez_hands used Yahoo Instant Messenger to contact the second undercover officer. During this online conversation, Stewart directly e-mailed the undercover officer a photograph purporting to be of himself and D.L., his girlfriend (he revealed her name in the Internet conversation). Stewart said that he and D.L. had sexually molested K.L., the ten-year old girl, and that the three of them had showered together and engaged in inappropriate sexual fondling while they were in the shower. Stewart also e-mailed a photograph from his collection of a young girl, approximately six years old, engaged in a sex act with an adult male and an adult female.

The Bentonville Police Department executed a search warrant at Stewart's address during which they seized three computers, a digital camera, and numerous computer discs, among other materials. According to Paragraph 17 of the presentence investigation report (PSR), to which Stewart made no objection, Stewart's computer contained 507 images of child pornography, including some nude and semi-nude photographs of K.L. The computer also contained excerpts of sexually explicit conversations between Stewart and others detailing the sexual abuse of children. During an interview with law enforcement, D.L. admitted that she took the picture of her daughter and Stewart with his hands apparently on her buttocks. Stewart admitted that his on-line identity was daddiez_hands, that he had the Internet conversations with the undercover officers, and that he had sent pictures of K.L. over the Internet, though he disputed that he was actually touching K.L. in the photographs.

A grand jury issued a three-count indictment against Stewart charging him with knowingly using the Internet to receive, send, and possess child pornography transported in interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(1), 2252A(a)(2), and 2252A(a)(5)(B). See also 18 U.S.C. §§ 2252A(b)(1), 2252A(b)(2), and 2256(8). Stewart pleaded guilty to Count Two–sending a photographic image of a female under 18 years old engaged in sexually explicit conduct, and Count Three–possessing a photographic image of a female under age 18 engaged in child pornography that previously had been sent over the Internet.

The PSR calculated an applicable advisory Guidelines sentencing range of 292 to 360 months. Relevant to this appeal, Stewart objected to the calculation of a five-level enhancement, which the district court based on a finding that Stewart "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." USSG § 2G2.2(b)(5). At sentencing, the government attempted to demonstrate the existence of a pattern of activity of sexual abuse or exploitation of a minor, introducing photographs from Stewart's computer showing K.L. partially nude and nude, with Stewart in some of the photographs with her, and statements made by Stewart in Internet chat room conversations. In those conversations, Stewart stated that he was sexually involved with K.L. and had also abused another young girl. Stewart presented no evidence at the sentencing hearing. His attorney argued that his Internet chat statements, which Stewart admitted making, were mere unsubstantiated bragging.

The district court overruled Stewart's objection to the five-level enhancement for engaging in a pattern of sexual abuse or exploitation of a minor. The district court concluded that although the photographs alone do not justify the enhancement, see USSG § 2G2.2, comment. (n.1) (stating that "'[s]exual abuse or exploitation' does not include possession, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor"), the photographs help to corroborate Stewart's Internet statements, which describe multiple instances of sexual abuse and exploitation of a minor. After considering the advisory Guidelines range and the factors of 18 U.S.C.

§ 3553(a), the district court imposed a Guidelines sentence of 300 months of imprisonment (220 months on Count Two and a consecutive 80-month sentence on Count Three). Stewart appeals.

## II.

Stewart argues that his sentence violates the Sixth Amendment because the Guidelines calculation is based upon judge-found determinations of fact. We reject Stewart's Sixth Amendment challenge to his sentence as lacking merit under an advisory Guidelines scheme. While the Supreme Court held in Booker that the federal Sentencing Guidelines are unconstitutional because they permit a sentence to be enhanced on the basis of judge-found facts rather than facts found by a jury beyond a reasonable doubt, 543 U.S. at 226-27, the remedial portion of Booker holds that the Guidelines are constitutional as long as they are applied in an advisory, rather than mandatory, fashion, id. at 245-46. See also United States v. Adams, 451 F.3d 471, 472-73 (8th Cir. 2006). The proper procedure therefore now requires the district court to calculate the appropriate advisory sentencing range under the Sentencing Guidelines, based on the facts found by the district court, and then to consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to make a discretionary determination of whether to impose a Guidelines sentence or a non-Guidelines sentence. United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir.), cert. denied, 126 S. Ct. 276 (2005). In this case, the district court followed this procedure and imposed a Guidelines sentence after applying the Guidelines in an advisory manner and considering the § 3553(a) factors. Consequently, no Sixth Amendment violation arises from the sentencing judge's determination of facts that were relevant to sentencing. See Adams, 451 F.3d at 472-73.

We likewise reject Stewart's challenge to the calculation of his advisory Guidelines range. Stewart asserts that the district court erroneously added a five-level sentencing enhancement for the specific offense characteristic of "engag[ing] in a

pattern of activity involving the sexual abuse or exploitation of a minor" on the basis of evidence that he asserts was untruthful. USSG § 2G2.2(b)(5). We review for clear error the district court's fact-findings related to the calculation of an advisory Guidelines sentence. United States v. Stobaugh, 420 F.3d 796, 803 (8th Cir. 2005), cert. denied, 126 S. Ct. 1093 (2006). We review the district court's ultimate sentencing decision for reasonableness. United States v. Thomas, 454 F.3d 904, 905 (8th Cir. 2006).

Specifically, Stewart argues that the photographs of K.L. were not sufficiently explicit to demonstrate sexual abuse or exploitation and that his Internet chat room comments were nothing but bragging–that is, he admitted making the statements but did not admit that they were true. Stewart objected to the PSR on this basis, and the Government presented the testimony of two law enforcement officers at the sentencing hearing. The Government introduced nine photographs of K.L. showing her nude and partially nude, which were not the basis for the counts to which he had pleaded guilty. Stewart is standing next to K.L. in one photograph, Stewart is pulling her underwear up her buttocks in another, and Stewart's hand appears to be on her buttocks in another photograph. Bentonville police officer, Detective Thomas Boyle, testified that D.L., K.L.'s mother, had taken the photographs and that they were found on Stewart's computer.

FBI Special Agent Scott Ledford testified about statements that Stewart had made in Internet conversations that were recorded on Stewart's computer. In these conversations, Stewart described a sexual relationship with K.L. Stewart stated that he had masturbated and ejaculated in front of K.L., he spoke of his arousal when watching K.L. walk around the house naked, and he said that his live-in girlfriend, K.L.'s mother, condoned and assisted in his sexual abuse of K.L. Stewart admitted in an interview with police officers that he had made the statements. Stewart presented no evidence at the sentencing hearing, and there were no statements from K.L.

The district court found, based upon all the evidence, that Stewart's Internet chat room banter was sufficiently reliable to support the sentencing enhancement. See United States v. Portillo, 05-3358, 2006 WL 2389369, at \*2 (8th Cir. Aug. 21, 2006) (noting that "[t]he court may still determine a witness's credibility at sentencing"). We conclude that the district court did not clearly err in its fact-finding. Even though the photographs of K.L. do not themselves depict Stewart engaging in sexual acts with K.L., see United States v. Gleich, 397 F.3d 608, 614 (8th Cir. 2005) (holding that "taking pictures of a non-pubic area such as the buttocks does not meet the definition of 'sexually explicit conduct'"), the district court properly considered the photographs as part of the totality of the circumstances in determining the reliability of Stewart's Internet chat room statements. The photographs depict Stewart's conduct outside the Internet chat room, and they attest not only to Stewart's sexual interest in K.L. and willingness to engage in inappropriate behavior with her, but also to his opportunity, as the mother's live-in boyfriend, to abuse K.L. The mother admitted taking the pictures. In addition to the pictures, Stewart made the same general type of statements to each undercover officer as they pursued their independent investigations as well as to others on the Internet. There is absolutely no evidence contradicting the truth of Stewart's statements; rather, he relies solely on his attorney's argument. These circumstances lend support to a finding that Stewart's explicit Internet chat room statements describing a pattern of engaging in the sexual abuse or exploitation of K.L. and his sexual abuse of an eight-year-old girl were credible. We see no clear error in the district court's finding that these statements were more likely than not true and applying the five-level enhancement. See United States v. Lee, 451 F.3d 914, 917 (8th Cir. 2006) ("Under the advisory Guidelines scheme, courts are required to find sentencing-enhancing facts only by a preponderance of the evidence.").

After properly calculating the advisory Guideline sentencing range, the district court considered the sentencing factors listed in 18 U.S.C. § 3553(a) and exercised its discretion to impose a sentence within the low end of the advisory Guidelines range. We presume that a sentence within the advisory Guidelines range is reasonable, see

United States v. Meyer, 452 F.3d 998, 1000 (8th Cir. 2006), and Stewart makes no argument to the contrary.

## III.

Accordingly, we affirm the judgment of the district court.

_____