# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2805

_____

United States of America,      *
     *
     Appellee,      *
     *    Appeal from the United States
     v.      *    District Court for the
     *    Western District of Arkansas.
Calvin Milo Alvarez,      *
     *
     Appellant.      *

_____

Submitted: December 12, 2006
Filed: March 1, 2007

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

In accordance with a plea agreement, Calvin Milo Alvarez pled guilty to receiving and attempting to receive child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), and 18 U.S.C. §§ 2256(2) and (8)(A). The district court[1] sentenced him to a 216-month prison term followed by a lifelong term of supervised release, with the special condition that he not have Internet access at his residence and that he have Internet access in other locations only with prior approval of the probation office. Alvarez appeals, asserting that the special condition of supervised

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

release limiting his Internet access is more restrictive than is reasonably necessary and that his sentence is unreasonable because there is insufficient evidence to support a five-level enhancement under the UNITED STATES SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2G2.2(b)(5) (2004). We affirm.

I.

On May 4, 2005, Fayetteville, Arkansas, police responded to an altercation between Alvarez and his roommate. The roommate told the police that he had discovered Alvarez wearing a diaper and viewing child pornography on his computer. Alvarez admitted that he had images on his computer of young boys wearing dresses and stated that he fantasized about being a little boy in a dress. He also stated that he had moved out of his mother's home and into his current apartment because his mother's home had Internet access and he could not refrain from looking at certain Internet content. He acknowledged needing help. Police seized the computer and later discovered that it contained illegal child pornography as well as thousands of pictures of children in diapers.

Detective Mike Parks of the Fayetteville Police Department conducted a recorded interview of Alvarez the following day. Alvarez admitted that he viewed child pornography on the computer. He also stated that he repeatedly deleted and then compulsively restored the images, indicating that he could not prevent himself from looking at them. Finally, he recounted sexual contact with his niece, KC, when he babysat her while she was two-and-a-half years old. He described an instance when, while she was under his supervision, he applied lotion to her buttocks and vagina for longer than was necessary to change her diaper and felt a mix of fear and pleasure from doing so. He acknowledged that material he accessed online played a role in his actions.

On May 18, officers interviewed KC's grandmother, Nancy Kate Jones, concerning abuse of the girl. Jones reported that she had heard KC tell Alvarez over the phone, "you no lick me anymore." Jones also stated that KC had been examined by medical personnel when she was taken to a hospital after suffering persistent irritation around her vagina. KC's mother confirmed that the foregoing examination had occurred in 2003 and that the pediatric clinic had suspected sexual assault. Detective Parks also interviewed KC, who had just turned four, on May 18. When asked whether there were any areas on her body where she should not be touched, Detective Parks later testified that KC (1) pointed directly to the vagina of an anatomically correct rendition of a female, (2) said "don't touch," and (3) stated "Calvin licked me there." She did not specify how many times the licking had occurred.

Alvarez subsequently pled guilty to one of fourteen counts of knowingly receiving and attempting to receive child pornography. In exchange for this plea, the government dismissed the other thirteen counts and moved for a three-level reduction for acceptance of responsibility. The probation office's revised presentence investigation report included a five-level enhancement under § 2G2.2(b)(5) because the "defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Alvarez objected to the enhancement, arguing that it lacked sufficient evidentiary support.

At the sentencing hearing, the district court heard testimony from the officers concerning their various interviews with Alvarez and KC, and from Jones. Jones stated that the genital-area irritation that had initially developed when KC was two-and-a-half years of age was not consistent with diaper rash. Furthermore, Jones had called KC prior to the hearing to ask how many times Alvarez had licked her. According to a neighbor who reported KC's response to Jones's question, KC had raised all ten fingers. Jones stated that KC's preschool had taught her that this hand gesture represented "many." She further testified that, according to KC, these events

occurred when nobody was home; that Alvarez was not himself wearing clothes when he licked her; and that he had removed her clothing.

As set forth earlier, the district court imposed a special condition of supervised release prohibiting Alvarez from having Internet access in his residence altogether and from having access to the Internet at any other location without prior approval of the probation office. Finding a pattern of sexual exploitation or abuse, the district court also imposed a five-level enhancement.

II.

i. The Special Condition Limiting Internet Access

In the absence of a timely objection to a condition of supervised release, as was the case here, we review the district court's selection of that condition for plain error. United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006). "Plain error exists if the district court deviates from a legal rule, the error is clear under current law, and the error affects substantial rights." Id. We will correct a plain forfeited error if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 736 (1993) (alteration in original) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). Under 18 U.S.C. § 3583(d), a district court may order a condition of supervised release beyond those mandated by that section, provided that such condition (1) is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a),[2] (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a), and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission. United States v. Mark, 425 F.3d 505, 507 (8th Cir. 2005).

[2]Such factors include: deterrence of criminal conduct, protection of the public from future crimes, and rehabilitation of the defendant. See 18 U.S.C. § 3553(a)(2) (2000).

-4-

With respect to the "reasonably related" requirement of § 3583(d)(1), we have held that "a complete ban on Internet access is reasonably related to the statutory purposes of deterring criminal conduct and protecting the public from further crimes of the defendant" where the defendant is guilty of offenses involving repeated viewings of child pornography over the Internet. Id. at 509. Regarding the "reasonably necessary" requirement of § 3583(d)(2), where the criminal conduct involves no more than the simple possession of child pornography, broad bans on Internet access have been overturned because they represent greater deprivations of liberty than are reasonable necessary. See, e.g., United States v. Crume, 422 F.3d 728, 733 (8th Cir. 2005) (citing United States v. Fields, 324 F.3d 1025, 1027 (8th Cir. 2003)); cf. Mark, 425 F.3d at 510 (holding that a complete ban is difficult to justify as a least restrictive means, while reserving judgment as to whether it may be appropriate in cases of mere possession where the defendant is incorrigible and less restrictive options are ineffective).

Unlike the defendant in Crume, whose special condition was held to be insufficiently linked to more than mere possession and therefore unjustified under an abuse of discretion standard, Alvarez's admission provides a sufficient nexus between his use of the Internet with his exploitation of KC to withstand plain error review. Alvarez compared his rubbing of KC's vagina with material he found online.[3]

---

[3]Indeed, his admission suggests that he thought about and took instruction from images and "stories" he had seen online, and that he compared them to what he was doing to KC. Although Alvarez claimed to have used his "stories" as a source of instruction on diaper-changing – an ostensibly non-sexual purpose – his reference to the stories and their fetishistic relevance to him provide important context for his statement that: "I got a real live girl here, and I'm changing her. Nobody's here, yet I'm changing her and I'm doing all this stuff with her, and then, you know, finding out that that actually did affect her, you know, for a negative, in my opinion." His reference to the stories in context with the sexual exploitation, his reflection on differences between his Internet-induced fantasies and the demonstrable emotional effect that his experience with KC was having on him, and his uncontrolled fetishistic

Accordingly, even though <u>Crume</u> states that district courts are restricted from imposing broad Internet bans for mere possession of child pornography, we conclude that there is no violation of that restriction where, as here, the defendant's statements and actions may be interpreted to suggest that online material provides him encouraging, actionable ideas. <u>See</u> <u>Mark</u>, 425 F.3d at 509-10 (comparing a defendant's mere possession of child-pornography with a case in which a predator used the Internet to sexually solicit minors); <u>see also</u> <u>United States v. Antelope</u>, 395 F.3d 1128, 1142 (9th Cir. 2005) (stating that deterrence and public protection goals justify the imposition of broad restrictions on Internet usage when Internet usage constitutes a "step on a path towards more serious transgressions"); <u>Fields</u>, 324 F.3d at 1027 ("In cases where defendants used computers or the internet to commit crimes involving greater exploitation, such restrictions have been upheld.").

Morever, severe restrictions may be the only way to prevent Alvarez from accessing prohibited material. Alvarez admitted that he has a problem with self-control, that every prior attempt to curtail his access to prohibited material has been unsuccessful, and that he needed help. Not only had he been deleting and compulsively restoring prohibited images, but he had to leave his mother's residence because he could not curb his inappropriate use of her Internet access. Additionally, we note that the special condition does not completely prohibit Alvarez's use of the Internet; should he present sufficient justification and secure his probation officer's consent, the terms of the special condition allow him access to the Internet outside of his residence. Finally, unlike the computer consultant defendant in <u>Mark</u>, 425 F.3d at 509, Alvarez's employment history (which included work as a stocker at a Target store and sporadic employment at Wal-Mart and fast food establishments) does not indicate that he has a particular day-to-day vocational need for Internet access. Accordingly, the district court's imposition of a broad Internet restriction condition

behavior, constitute a sufficient nexus between his Internet use and exploitative sexual behavior to withstand plain error review.

does not constitute reversible plain error, if indeed it can be even arguably characterized as error at all.

### ii. The Five-Level Enhancement

A defendant who engages in a pattern of activity involving the sexual abuse or exploitation of a minor is subject to a five-level enhancement under the Guidelines. U.S.S.G. § 2G2.2(b)(5). Such patterns of activity include "combination[s] of two or more separate instances of . . . sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation . . . occurred during the course of the offense . . . ." U.S.S.G. § 2G2.2(b)(5) cmt. n.1. Under an advisory guidelines regime, sentencing judges need find sentence-enhancing facts only by a preponderance of the evidence. United States v. Garcia-Gonon, 433 F.3d 587, 593 (8th Cir. 2006); United States v. Denton, 434 F.3d 1104, 1114 (8th Cir. 2006). We review the district court's fact-finding related to the calculation of an advisory guidelines sentence for clear error. United States v. Stewart, 462 F.3d 960, 963 (8th Cir. 2006) (citing United States v. Stobaugh, 420 F.3d 796, 803 (8th Cir. 2005), *cert. denied*, 126 S.Ct. 1093 (2006)).

The district court's conclusion that Alvarez engaged in a pattern of activity involving the sexual abuse or exploitation of KC was not clearly erroneous. Alvarez's description of rubbing KC's vagina while changing her diaper was understandably considered an admission of abuse or exploitation of a minor. Although Alvarez argues that only hearsay evidence supports any additional findings of abuse, hearsay evidence may be used at sentencing if it bears "'sufficient indicia of reliability to support its probable accuracy' . . . ." United States v. Shackelford, 462 F.3d 794, 796 (8th Cir. 2006) (per curiam) (quoting United States v. Wise, 976 F.2d 393, 402 (8th Cir. 1992) (en banc)). Here, Alvarez's statements constitute a non-hearsay admission under FED. R. EVID. 801(d)(2). Because the admission corroborates the hearsay testimony of Jones and Detective Parks by establishing a precedent of inappropriate

vaginal contact with KC, the admission enhances the reliability of their testimony. Furthermore, Jones's hearsay testimony describing KC's statements about Alvarez licking her were substantially consistent with KC's statements to Detective Parks as he reported them.[4] Their testimony was highly specific and detailed, and nothing presented suggests that they were both motivated to lie. Finally, the facts underlying their testimony comport with a pediatric clinic's referral of KC to the Children's Safety Center based on a suspicion that KC's vaginal rash might have been the result of sexual assault. In light of the testimony and evidence before the district court and the relevant sentencing standard, it was not clearly erroneous for the district court to have found a pattern of sexual exploitation or abuse of KC.

The judgment is affirmed.

_____

---

[4]Alvarez contends that the hearsay testimony of Jones and Detective Parks conflict and should not be relied upon. Both essentially testified that KC had said that Alvarez had licked her in the region of her vagina. KC reportedly told Jones, however, that Alvarez had licked her "down low on my tummy," and she reportedly told Detective Parks that the only term she uses to describe the vaginal area at which he pointed in a diagram was "pee." In light of the testimony and evidence presented, this inconsistency may simply be indicative of a young child's descriptive imprecision or Detective Parks's imprecision pointing at the diagram. Whatever label she applies to the region, all accounts concur that KC admits being licked there. The district court's treatment of the testimony as consistent is not clearly erroneous.