GRUENDER, Circuit Judge,
concurring in part, dissenting in part, and announcing the judgment of the court in part.
I agree with the majority’s conclusion that the district court did not abuse its discretion in imposing the special condition of supervised release concerning the probation office’s authority to track Durham’s whereabouts (“Special Condition 2”). I also agree with the conclusion that there is no meaningful conflict between the district court’s oral pronouncement of the special condition prohibiting Durham from accessing child pornography (“Special Condition 7”) and the description of that condition in the written judgment. I do not agree, however, with the majority’s conclusion that the district court improperly applied the two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for distribution of material involving the sexual exploitation of a *937 minor. Accordingly, I join Parts II.B.1 and II.B.2 of Judge Bye’s partial majority opinion, but I respectfully dissent from the outcome and rationale set forth in Part II.A. As to the special condition restricting Durham’s access to the Internet (“Special Condition 5”), this opinion announces the judgment of the court. Although we conclude that the district court did not commit plain error in imposing Special Condition 5, we remand with instructions to amend the relevant portion of the written judgment to conform to the district court’s oral pronouncement.
I.
Regarding the distribution enhancement, the dispositive question is whether the district court clearly erred in finding that Durham distributed child pornography. See United States v. Dodd, 598 F.3d 449, 451 (8th Cir.2010) (noting that deciding whether a defendant qualifies for the distribution enhancement is “a fact-intensive inquiry,” and thus applying the deferential “clear error” standard of appellate review), cert. denied, 561 U.S. -, 130 S.Ct. 3533, — L.Ed.2d -, 2010 WL 2191746 (2010); see also United States v. Bates, 584 F.3d 1105, 1108 (8th Cir.2009) (“We review the district court’s interpretation and application of the guidelines de novo and its factual findings for clear error.” (citing United States v. Pate, 518 F.3d 972, 975 (8th Cir.2008))). It bears repeating that the relevant application note defines “distribution” to include “posting material involving the sexual exploitation of a minor on a website for public viewing.” U.S.S.G. § 2G2.2 cmt. n. 1. Based on this application note, along with the ordinary meaning of the applicable terms, we recently held that “distribution as defined in [section] 2G2.2 includes operating a file sharing program that enables other participating users to access and download files placed in a shared folder, and then placing child pornography files in that folder.” Dodd, 598 F.3d at 452-53.
The majority acknowledges that our pri- or cases have upheld the application of “distribution enhancements” — viz., the two-level enhancement under section 2G2.2(b)(3)(F) and the five-level enhancement under section 2G2.2(b)(3)(B), which requires distribution in exchange for the receipt or the expectation of receipt of a thing of value — based on the defendant’s having some amount of “sophistication” about the file-sharing program he used to acquire child pornography. Ante, at 929 (citing United States v. Estey, 595 F.3d 836, 844 (8th Cir.), cert. denied, 560 U.S. -, 130 S.Ct. 3342, 176 L.Ed.2d 1236 (2010); United States v. Ultsch, 578 F.3d 827, 830 (8th Cir.2009); United States v. Stults, 575 F.3d 834, 849 (8th Cir.2009), cert. denied, 559 U.S. -, 130 S.Ct. 1309, — L.Ed.2d - (2010)). And the majority notes that in this case, the district court “evoked the familiar sophistication basis for ... [applying] the distribution enhancement,” finding that “Durham was ‘very knowledgeable’ about Limewire’s capabilities.” Ante, at 930. Yet the majority concludes that it was improper for the district court to apply the distribution enhancement. See ante, at 932. The majority gives three reasons.
First, the majority says that the district court’s finding about Durham’s sophistication “appears to be contradictory to the evidence in the record.” Ante, at 929. Second, the majority says that the district court “violated [a] well-established principle of our case law by automatically applying the distribution enhancement based on Durham’s use of a file-sharing program.” Ante, at 931. Third, the majority says that “this matter is distinguishable from Dodd because ... Durham presented ‘con *938 crete evidence’ of his ignorance.” Ante, at 932. I disagree on all counts.
The majority’s first and third reasons overlap, so I will discuss them together. As an initial matter, there is ample evidence in the record to support the district court’s finding that Durham knew how LimeWire worked. For instance, the stipulated factual basis in the plea agreement and undisputed portions of the presentence investigation report established the following facts:
• Police identified at least 59 files containing known or suspected depictions of child pornography that had been posted on LimeWire- — and which were therefore accessible to the public — by a computer user whose Internet Protocol address was traced back to Durham’s home.
• Police found nearly 50 videos and more than 400 images containing child pornography on a computer seized from Durham’s home.
• Durham admitted to police that he employed LimeWire to download child pornography, searching for illicit videos and images using terms such as “kid sex” and “teen sex.”
• Although Durham’s computer had several user profiles, all of the depictions of child pornography stored on the computer were located under Durham’s password-protected profile.
At the sentencing hearing, Detective A1 Barrios of the Springdale, Arkansas Police Department testified at length about the investigation into Durham’s criminal activity. One of the things Detective Barrios discussed was a user-created desktop icon found under Durham’s profile, named “shared-shortcut” or “shared desk-shortcut.” According to Detective Barrios, a user who double-clicked on that icon would go directly to the shared folder associated with Durham’s LimeWire account. Detective Barrios reported that he “uncovered evidence that ... child notable files [i.e., files containing known or suspected depictions of child pornography]” had been “downloaded with Limewire and ... saved in [Durham’s] shared folder,” but “none of them were present [in the shared folder]” when the computer was seized.
Detective Barrios also testified about how LimeWire works and what a typical user would learn about that program over time. In particular, Detective Barrios told the district court about various ways a user could discover that files were being uploaded from his shared folder by other users. To take just one example, Detective Barrios directed the court’s attention to up and down arrows displayed on a screen shot taken from Durham’s computer. These arrows, Detective Barrios explained, would have showed active file transfers being conducted through Lime-Wire — both downloads to Durham’s shared folder and uploads by other users from Durham’s shared folder. In response to follow-up questions posed by the district court, Detective Barrios testified that it was “[b]arely possible” that files could be shared on LimeWire without the user’s knowledge, but only if the user had very limited experience with file sharing. Detective Barrios went on to say that “[a]ny person who’s used that program for months would be able to see file transfers as they were taking place, including downloads and uploads,” thereby suggesting that it would be unlikely for an experienced user to share files inadvertently.
The majority gives short shrift to most of this evidence. The majority does, however, discuss two items: Durham’s admission that he used search terms such as “kid sex” and “teen sex” to search for child pornography, ante, at 930 n. 4, and the desktop shortcut to Durham’s shared folder, ante, at 929-30. The majority asserts *939 that the search terms and the shortcut are not relevant because they prove only that Durham desired to (and did) doimload child pornography, and hence do not qualify as “indicia of distribution.” Ante, at 930 n. 4. Here, the majority has created and dispatched a straw man. What counts under Estey, Ultsch, and Stults is whether Durham had knowledge about how Lime-Wire worked. The evidence that the majority rejects is plainly relevant to deciding how much Durham knew about the file-sharing program he used to acquire child pornography, even if it does not conclusively prove that he intentionally distributed illicit files. The presence on his desktop of a shortcut to a folder whose name included the word “shared,” and which at one time stored files containing child pornography, strikes me as especially probative.
In any event, the two disputed items should not be considered in isolation. The other facts introduced above proved that Durham used LimeWire to acquire a large collection of child pornography. And Detective Barrios’s testimony confirmed that an experienced user of LimeWire could scarcely avoid learning that files stored in his shared folder were accessible by other users (though that fact was already evident to anyone familiar with popular peer-to-peer file-sharing programs, such as LimeWire). Considered as a whole, the evidence in the record was more than sufficient to support a finding that Durham was a sophisticated member of Lime Wire’s peer-to-peer network, that he understood how file sharing worked, and that he knowingly used LimeWire to distribute child pornography.
If there was any residual doubt on this point, it ought to have been dispelled by our recent decision in Dodd. There, we noted that “[o]ne can hypothesize ... that even a defendant who pleaded guilty to knowing receipt and possession [of child pornography] might have no knowledge that his computer was equipped to distribute.” 598 F.3d at 452. But we observed that “[t]he purpose of a file sharing program is to share, in other words, to distribute.” Id. Thus, we held that “[a]bsent concrete evidence of ignorance — evidence that is needed because ignorance is entirely counterintuitive — a fact-finder may reasonably infer that the defendant knowingly employed a file sharing program for its intended purpose.” Id. In Dodd, we affirmed the district court’s application of the distribution enhancement even though the Government presented no evidence at sentencing. See id. at 451. After Dodd, the notion that we may overturn the district court’s application of the distribution enhancement due merely to a lack of supporting evidence (beyond Durham’s extensive use of LimeWire) would be difficult or impossible to maintain.
It is possible, of course, that Durham presented adequate evidence of ignorance to undermine the district court’s finding that he distributed child pornography. The majority suggests that Durham did so by eliciting testimony from his brother, Casey. See ante, at 928-29, 931-32. As the majority recounts, “Casey indicated [that] he installed Limewire on Durham’s computer, [that] he did not instruct Durham on how to use the program, and [that] Durham was not knowledgeable regarding the program’s capabilities.” Ante, at 932. The majority holds that this testimony constitutes “concrete evidence” of Durham’s ignorance, ante, at 931-32, and concludes that “even under the stricter Dodd standard, the district court’s application of the distribution enhancement was improper,” ante, at 932.
I am skeptical that the opinion of a defendant’s sibling concerning the extent of the defendant’s sophistication is the *940 kind of “concrete evidence” that the court in Dodd had in mind. Nevertheless, even assuming that Casey Durham’s testimony was relevant and probative, it does not follow that his testimony seriously undermined the district court’s finding that the defendant was “very knowledgeable” about how LimeWire worked. At most, Casey Durham’s testimony left the district court with a choice between two permissible views of the evidence. See Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Whether we think the district court adopted the more plausible view is of no moment, for “[w]here there are two permissible views of the evidence, the fact-finder’s choice between them cannot be clearly erroneous,” id. (citing United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150 (1949)). See also United States v. Tournier, 171 F.3d 645, 648 (8th Cir.1999) (“Under the clear error standard, we need not agree with the district court’s findings of disputed fact to affirm.”). This unexceptional principle is entirely consistent with the court’s reasoning in Dodd, so I reject the majority’s suggestion that Dodd can be distinguished away.[14]
That leaves the majority’s assertion that the district court “violated [a] well-established principle of our case law by automatically applying the distribution enhancement based on Durham’s use of a file-sharing program,” ante, at 931. See also Dodd, 598 F.3d at 452 n. 2 (“[O]ur decisions applying [United States v. Griffin, 482 F.3d 1008 (8th Cir.2007)] have made clear that the government must prove that [a] defendant expected to receive a thing of value on a case-by-case basis, but the issue can be proved by circumstantial evidence. The same analysis applies to the two-level distribution enhancement.” (internal citations omitted)). In my view, the proposition that the district court automatically applied the enhancement is inconsistent with the majority’s earlier statement that the district court “evoked the familiar sophistication basis for ... [applying] the distribution enhancement, as it concluded [that] Durham was ‘very knowledgeable’ about Lime-wire’s capabilities,” ante, at 929. If the district court made a factual finding about Durham’s sophistication — and the majority says that it did, see ante, at 928-29' — then the district court’s application of the distribution enhancement could not have been automatic..
The automatic application theory is flawed in another way: namely, it is incompatible with any fair reading of the district court’s comments at the sentencing hearing. This conclusion becomes virtually inescapable once the district court’s comments — quoted selectively and interpreted uncharitably by the majority — are placed in context. Here, then, is a slightly abridged version of what the district court said in ruling on the enhancement, starting on page 75 of the sentencing transcript (page 90 of the consolidated transcript of the change of plea and sentencing hearings):
*941 All right. Ladies and gentlemen, at issue here is the provision or the part of the Pre-sentence Investigation Report that was prepared by Mr. Scott [a U.S. Probation Officer], which opines and states that he believes that there is a specific offense characteristic that warrants the addition of two points to the total offense level. The base total offense level started at 22, as shown by Paragraph 31 of the Pre-sentence Investigation Report, and had a two-point increase under Paragraph 32. The challenged increase is under Paragraph 33.
Now, in the commentary to [section 2G2.2], there is a definition[] section under Application Note 1: “ ‘Distribution’ means any act, including possession with intent to distribute, production, advertisement, and transportation^] related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing, but does not include the mere solicitation of such material by a defendant.”
So I think the question becomes, under the circumstances here shown by the proof, ... whether there was a “posting” of the material. I haven’t heard any evidence that would persuade me that the defendant possessed with intent to distribute or advertise or transport, but I think that there is evidence to indicate that this material was posted because it was placed on a Limewire program, the signal, and perhaps only purpose of which is to do that very thing, to post it to permit it to be shared by any and all who might choose to access that site.
... [T]he defense’s posture is, well, that may all be true, but it is not shown, and cannot be shown, at least to the defendant’s satisfaction, that he knew that would be the case, that if these materials were placed in the Limewire system, or whatever it is, that that could amount to a posting, which would make it available for public viewing.
The defendant, of course, has not testified. He has no obligation to do so, but he has not indicated what his thoughts were.... [I]n the body of the [presentence] report, there is a recounting of what he did say when he was interviewed, and he — according to the report, which these portions are not objected to, he was asked if he downloaded a lot of stuff to the computer, and he said he used Limewire to download songs. When told that they, the detectives, were aware that there was child porn on his computer and they wanted to know who was responsible for it, he initially advised the detectives that he “doesn’t look at that stuff’.
When told his computer had a lot of activity regarding child pornography, Durham responded that he watches a lot of “To Catch a Predator”. Durham was asked, and agreed to an interview later at the Springdale Police Department. ... During that interview, he admitted to showing his daughter a picture of a 12-year[-]old girl performing oral sex on a man for educational purposes. Durham explained that he showed this picture to his daughter to tell her this could happen to her if she was not careful on the internet. Whether the picture came from the internet is not clear. It hasn’t been shown to me one way or the other.
[Durham] stated he and his daughter then watched “To Catch a Predator”. Durham then admitted to looking at 30 to 40 images of 12-year[-]old girls, etcetera, etcetera. He said that he would *942 type in certain terms on Limewire to download these images.
Now, based on that and the testimony that I have heard here, it would seem to me that the defendant was very knowledgeable that the Limewire program would permit him to access ... and download child pom as and when he chose, without getting any permission from anybody, but that that feature would permit him to do that. It’s strange credulity [read: “It strains credulity”] to reason that he would not, by that knowledge, understand that it’s a two-way streetf] that if he could do that, it’s quite likely that others could as well.
His brother testified, I think quite candidly, that he well knew what that program was and how it was easily accessible. I think the difficulty with the Government’s proof here is they have no statement from Mr. Durham saying that he knew that, and that he was aware when he posted these images on Lime-wire that the public could access it, even as he could and did from other sites. But the absence of direct evidence on that, I don’t think curtails or forbids a conclusion that he did know.
The default program on the computer, its existence, I think, is troubling initially, but when it is seen that the defendant was knowledgeable enough, from however source he gained his knowledge, to enter his own profile and to make certain changes to those defaults, one of which [was] to select and utilize an icon that specifically mentions share[d] files, it sort of defies common sense to think that a person who could and would do that would not believe that someone other than himself could access the files that were on that Limeunre since, of course, he ... himself could do it.
... [T]he proof standard that I have in a sentencing hearing is not proof beyond a reasonable doubt, but a far lesser standard that is more likely than not, or basically a preponderance of the evidence, if you will. Judged by that standard, I am not able to say that I can conclude that Mr. Durham did not know that the images that he downloaded and had present and posted on his Limewire program were not accessible to the public, and so I will overrule the objection. I do think the two-point enhancement is appropriate, so I will overrule the objection on that score.
(Emphasis added.)
Durham’s attorney, James Pierce, then moved for a two-level reduction under section 2G2.2(b)(l), which applies only if “the defendant’s conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor.” Having found seconds earlier that Durham’s conduct was not limited to receipt or solicitation, the district court could have summarily rejected the requested reduction. Instead, the district court gave this additional explanation:
Well, with respect, I don’t think that the section you mentioned, Mr. Pierce, is applicable by its own terms. And I did read them earlier. I’ll mention them again. Under [subsection (b) ], specific offense characteristics, ... “If (A)”— and that’s the first prong — ... “[subsection (a)(2) ] applies” — and it does because there’s a 22 awarded — “and (B) the defendant’s conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor.”
Based upon my ruling and what I’ve heard^ his conduct was not limited to that because it [ie., child pornography] *943 was posted on the Limewire. He could have received it [ie., child pornography], it seems to me, or solicited it [ie., child pornography] without utilizing a program which featured automatic file-sharing. So I don’t think he qualifies for that provision. So I’ll deny your motion for that reason.[15]
Considering all of the district court’s analysis, and giving substantial weight to the comments placed in italics, I am convinced that the district court’s ruling on the distribution enhancement was proper in all respects. The district court’s extensive discussion of the issue, culminating in a factual finding about Durham’s sophistication, refutes the proposition that the court applied the enhancement automatically. Indeed, if the district judge meant to avoid making an individualized determination, it would be passing strange for him to spend so many words explaining a supposedly automatic decision. Since I see no sound basis for concluding that the district court clearly erred in finding that Durham distributed child pornography, I would affirm the court’s application of the enhancement under section 2G2.2(b)(3)(F).
II.
Regarding Special Condition 5, this opinion, which Judge Beam joins in relevant part, announces the judgment of the court. We first address Durham’s challenge to the district court’s oral pronouncement restricting Durham’s access to the Internet. Durham did not object to Special Condition 5 at sentencing, so our review is for plain error. See, e.g., United States v. Kerr, 472 F.3d 517, 521 (8th Cir.2006). Because we conclude that the district court did not commit plain error in imposing this special condition, we go on to consider Durham’s alternative claim, that the district court’s oral pronouncement is inconsistent with the description of Special Condition 5 in the written judgment.
For the purpose of reviewing Durham’s plain error challenge, we assume that Special Condition 5 is limited to what the district court pronounced at sentencing; specifically: “A fifth added condition will be the defendant shall not access the internet from any location without prior approval by the probation office and for a justified and not prohibited reason. The defendant, however, shall not have internet access at his residence.” As Durham recognizes, albeit with a little equivocation, our decision in United States v. Ristine, 335 F.3d 692 (8th Cir.2003), precludes us from applying a “relaxed” version of the plain error standard. (There is no dissent on this point, see ante, at 935.) On the merits, we are not persuaded by Durham’s argument that the district court committed plain error in imposing Special Condition 5. See Kerr, 472 F.3d at 520-21 (“Plain error occurs if the district court deviates from a legal rule, the error is clear under current law, and the error affects the defendant’s substantial rights.” (quoting United States v. Crose, 284 F.3d 911, 912 (8th Cir.2002) (per curiam))).
*944 While a sentencing court has “wide discretion” to impose special conditions of supervised release, such conditions must satisfy the requirements set out in 18 U.S.C. § 3583(d). United States v. Crume, 422 F.3d 728, 732-33 (8th Cir.2005).
First, the special conditions must be “reasonably related” to ... the nature and circumstances of the offense, the defendant’s history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant’s educational, vocational, medical or other correctional needs. Second, the conditions must “involve! ] no greater deprivation of liberty than is reasonably necessary” to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant’s correctional needs. Finally, the conditions must be consistent with any pertinent policy statements issued by the [United States Sentencing Commission],
Id. at 733 (second alteration in original) (citations omitted).
Durham does not argue that Special Condition 5 is inconsistent with any pertinent policy statement. And there is no real doubt that restricting Durham’s access to the Internet is reasonably related to the nature and circumstances of the offense — which, at a minimum, involved using LimeWire to acquire a large collection of child pornography. See United States v. Bender, 566 F.3d 748, 751 (8th Cir.2009); United States v. Mark, 425 F.3d 505, 509 (8th Cir.2005). Moreover, we are satisfied that the challenged condition is designed to deter similar criminal conduct, to protect the public from further crimes that Durham might otherwise perpetrate, and to serve Durham’s correctional needs. See Bender, 566 F.3d at 751; Mark, 425 F.3d at 509.
The question, then, is whether Special Condition 5 involves a greater deprivation of liberty than is reasonably necessary under the circumstances. We are convinced that the answer is “no,” for two principal reasons. First, Special Condition 5 does not amount to a complete ban on Internet access. Contra ante, at 936. In fact, the condition permits Durham to access the Internet as long as he obtains permission from the probation office. In reviewing similar conditions, we have found that restrictions on computer use and Internet access do not constitute a “total ban” where the defendant can seek permission from his probation officer to perform the restricted activities. See United States v. Fields, 324 F.3d 1025, 1027 (8th Cir.2003); see also Bender, 566 F.3d at 751-52 (upholding a so-called “ban” on computer use and Internet access, in part because “[t]he ban allows [the defendant] to use a computer and internet with the permission of his probation officer”); Ristine, 335 F.3d at 695-96 (upholding a condition prohibiting the defendant, Ristine, from “owning or operating” a computer without the permission of his probation officer, in part because “Ristine — like the Fields defendant — is not wholly barred from using a computer”). Thus, Special Condition 5 must be treated as merely a partial deprivation of Durham’s interest in having unfettered access to the Internet.
Second, this is not a case in which “the record is devoid of evidence that [the defendant] has ever used his computer for anything beyond simply possessing child pornography.” Cf. Crume, 422 F.3d at 733. On the contrary, the record includes much evidence showing that Durham used his computer to distribute child pornography. See supra Part I. Even if one believes that the enhancement under section *945 2G2.2(b)(3)(F) should not have been applied due to Durham’s alleged ignorance, it is still beyond dispute that at least 59 files containing known or suspected depictions of child pornography were posted on LimeWire — and therefore made accessible to the public — by a computer user whose Internet Protocol address was traced back to Durham’s home.
Our precedents in this area establish that district courts may impose more restrictive conditions where, as here, a defendant’s offense involved distribution of child pornography. See Ristine, 335 F.3d at 696; Fields, 324 F.3d at 1027; see also Kerr, 472 F.3d at 523 (“We have found [that] child pornography distribution offenses are more serious than mere possession offenses.” (citing Fields, 324 F.3d at 1027)). Because Special Condition 5 permits Durham to access the Internet as long as he obtains permission from the probation office, we see no sound basis for concluding that the condition involves a greater deprivation of liberty than is reasonably necessary under the circumstances. We therefore hold that the district court did not abuse its discretion, much less plainly err, in imposing Special Condition 5.
All that remains is to determine whether the district court’s oral pronouncement is inconsistent with its written description of Special Condition 5. Recall that at sentencing, the district court said the following: “A fifth added condition will be the defendant shall not access the internet from any location without prior approval by the probation office and for a justified and not prohibited reason. The defendant, however, shall not have internet access at his residence.” One day later, the district court entered a written judgment, which describes Special Condition 5 as follows: “The defendant shall not have access to an internet-connected computer or other device with internet capabilities or access the internet from any location without pri- or approval by the probation office and for a justified reason. The defendant shall not have internet access at his residence.” (Emphasis added.) Durham suggests that the written judgment conflicts with the oral pronouncement because it broadens the restriction to extend to a vast array of modern devices, including many cell phones, portable media players, and televisions, among other things. The panel unanimously agrees that Durham’s suggestion is correct. See ante, at 934-35.
Our cases make clear that “[w]here an oral sentence and the written judgment conflict, the oral sentence controls.” United States v. Foster, 514 F.3d 821, 825 (8th Cir.2008) (quoting United States v. Glass, 720 F.2d 21, 22 n. 2 (8th Cir.1983)). In this instance, we resolve the discrepancy by remanding with instructions to amend the relevant portion of the written judgment to conform to the oral pronouncement. See, e.g., United States v. Alburay, 415 F.3d 782, 788 (7th Cir.2005); United States v. Martinez, 250 F.3d 941, 942 (5th Cir.2001) (per curiam).
III.
In summary, I join Parts II.B.l and II.B.2 of Judge Bye’s partial majority opinion, but I respectfully dissent from the outcome and rationale set forth in Part II.A. As to Special Condition 5, this opinion announces the judgment of the court. We conclude that the district court did not commit plain error in imposing Special Condition 5, but we remand with instructions to amend the written judgment to conform to the district court’s oral pronouncement.

. I likewise reject Durham's implication that this panel can either disregard Dodd or hold that Dodd was wrongly decided. See ante, at 932 n. 9. As we have said many times, ''[o]ne panel of this Court is not at liberty to disregard a precedent handed down by another panel,” United States v. Zuniga, 579 F.3d 845, 848 (8th Cir.2009) (per curiam) (alteration in original) (quoting Drake v. Scott, 812 F.2d 395, 400 (8th Cir.1987)), cert. denied, 560 U.S. -, 130 S.Ct. 3384, 177 L.Ed.2d 305 (2010), and ”[o]nly the court en banc may overrule circuit precedent, subject to a limited exception in the case of an intervening Supreme Court decision that is inconsistent with circuit precedent,” id. (citing Young v. Hayes, 218 F.3d 850, 853 (8th Cir.2000)).

. The majority suggests that the last quoted paragraph is the best evidence that the district court applied the distribution enhancement automatically, stating that the district court "explicitly concluded Durham could have avoided the enhancement had he not used a file-sharing program.” Ante, at 931. But the majority's interpretation cannot be correct, unless one assumes that the district court conflated the enhancement under section 2G2.2(b)(3)(F), which it had already granted, with the requested reduction under section 2G2.2(b)(l). Because the district court could not have granted the reduction without reversing the ruling it had made on the enhancement a few seconds earlier, the motion for a reduction was obviously doomed, and the district court would have been justified in rejecting the motion without further comment.