# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 12, 2010 Decided April 2, 2010

No. 08-3120

UNITED STATES OF AMERICA,
APPELLANT

v.

MARK WAYNE RUSSELL,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cr-00176-RBW-1)

———

*Tony Axam Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roy W. McLeese III*, *Mary B. McCord*, and *Julieanne Himelstein*, Assistant U.S. Attorney.

Before: HENDERSON and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

Concurring opinion filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Defendant Mark Russell pleaded guilty to one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) (2006). The district court sentenced him to 46 months of imprisonment and 30 years of supervised release. A special condition of his supervised release specifies that Russell may not "possess or use a computer for any reason." Russell challenges the duration of his supervised release and the computer restriction, arguing that each is substantively unreasonable. See *Gall v. United States*, 552 U.S. 38, 51 (2007). We affirm the length of the supervised release, but vacate the computer restriction and remand for resentencing.

\* \* \*

In June 2006, using a computer at his home in Columbia, Maryland, Russell entered an internet chat room and initiated a conversation with an individual identifying herself as a 13-year old girl; "she" was actually a member of the District of Columbia Metropolitan Police Department. Three days later, Russell again engaged the "child" in an online chat. Over the course of their second chat, Russell performed a solo sex act live via webcam and invited the "child" to have sex with him. The purported child, in response, provided her address in Washington, D.C., and said that her mother would not be home until seven or eight that evening. Russell drove to the address, parked his car, and e-mailed the "child" to say he had

arrived.  After a period of waiting, he began to drive away, at which point he was arrested.

Russell was 46 when he was sentenced, and approximately 50 at the time of his release.  He had worked as an applied systems engineer at Johns Hopkins University for ten years before becoming unemployed at the end of April 2006.  Before this arrest, he had had no contact with the law.  According to his wife of 23 years, the mother of their three children, he had been depressed in the period just before his arrest.

*30-Year Term of Supervised Release*.  Russell challenges the 30-year term of his supervised release as substantively unreasonable.  The parties initially spar over the proper standard of review.  The government, though acknowledging that counsel posed an adequate objection to the *conditions* of supervised release, contends that it did not embrace the *term*.  We assume in the government's favor that Russell's objection in fact went only to the conditions.

We held in *United States v. Bras*, 483 F.3d 103 (D.C. Cir. 2007), that we review claims of substantive unreasonableness for abuse of discretion, regardless of whether an objection on those terms was made.  *Id*. at 113.  Noting that reasonableness is simply "the standard of *appellate* review," we quoted the 7th Circuit's discussion of the point:

> To insist that defendants object at sentencing to preserve appellate review for reasonableness would create a trap for unwary defendants and saddle busy district courts with the burden of sitting through an objection—probably formulaic—in every criminal case.  Since the district court will already have heard argument and allocution from the parties and weighed the relevant § 3553(a) factors before pronouncing sentence, we fail to see how

requiring the defendant to then protest the term handed down as unreasonable will further the sentencing process in any meaningful way.

*Id.* (quoting *United States v. Castro-Juarez*, 425 F.3d 430, 433-34 (7th Cir. 2005)); see also *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (no duty to object to sentence on grounds of substantive unreasonableness). Such a requirement would indeed yield a "formulaic" statement. Substantive reasonableness is the catch-all criterion under which the reviewing court monitors (deferentially—for abuse of discretion) whether the district court has given reasonable weight to all the factors required to be considered. Presumably all (or virtually all) defendants would prefer a shorter sentence, a shorter period of supervised release, and less restrictive conditions. It would hardly alert the district court to anything new for defense counsel to say that defendant sought a more favorable sentence. By contrast, unnoticed errors of the sort characterized by the Supreme Court in *Gall* as procedural, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence— including an explanation for any deviation from the Guidelines range," 552 U.S. at 51, would normally be reviewed for plain error. *In re Sealed Case*, 527 F.3d 188, 191-93 (D.C. Cir. 2008) (applying plain error review, in the absence of objection at trial, to a sentencing judge's failure to provide an explanation of the sentence); see also *Vonner*, 516 F.3d at 386-88.

The government argues that in the absence of objection we should apply plain error in reviewing a substantive reasonableness challenge to the *duration* of supervised release, citing *United States v. Sullivan*, 451 F.3d 884 (D.C.

Cir. 2006). In *Sullivan*, we reviewed a challenge to the substantive reasonableness of a *condition* of supervised release for plain error. *Id*. at 894. See *United States v. Love*, 593 F.3d 1, 8 (D.C. Cir. 2010) (like *Sullivan*, applying plain error review to substantive reasonableness challenge of a *condition* of supervised release). Whatever the precedential effect of *Sullivan* and *Love* may be with respect to discretionary conditions, they do not address the applicable standard with respect to the duration of supervised release. On this question, we find the reasoning in *Bras* to be persuasive and thus proceed under an abuse of discretion standard.

Appellate review of the duration of supervised release parallels review of a term of imprisonment. While in the latter we inquire whether the district court abused its discretion in applying the factors mandated by 18 U.S.C. § 3553(a), *Gall*, 552 U.S. at 56, here we ask whether the court abused its discretion in applying the factors specified by 18 U.S.C. § 3583(c) for fixing a term of supervised release. These are in fact simply a subset of those specified in § 3553(a), namely:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed-- . . .

>  (B) to afford adequate deterrence to criminal conduct;

>  (C) to protect the public from further crimes of the defendant;

>  (D) to provide the defendant with needed educational or vocational training, medical care, or

other correctional treatment in the most effective manner; . . .

(4) [the applicable Sentencing Guidelines range based on the defendant's offense and criminal history];

(5) [pertinent policy statements issued by the Sentencing Commission]; and

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a), cross-referenced in 18 U.S.C. § 3583(c).

The Sentencing Guidelines provide that violators of § 2423(b) (such as Russell) should receive a term of supervised release ranging from three years to life. U.S.S.G. § 5D1.2(b)(2). In *United States v. Law*, 528 F.3d 888 (D.C. Cir. 2008), we held that sentences within the applicable Guidelines range are presumed reasonable. *Id*. at 902; see *Gall*, 552 U.S. at 51 (allowing courts of appeal to apply such a presumption); *Rita v. United States*, 551 U.S. 338, 350-51 (2007) (same).

Russell does not challenge *Law* directly, but argues that *Rita*, in saying that an appellate presumption of reasonableness for within-Guidelines sentences was permissible under the Sixth Amendment, relied on logic that is inapplicable here. He says that *Rita* is premised on an assumption "that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Appellant's Br. at 15 (quoting *Rita*,

551 U.S. at 350).  Here that condition is absent, he thinks, because the broad range of three years to life does not serve § 3553(a)(6)'s goal of "avoid[ing] unwarranted sentencing disparities among defendants with similar conduct."  *Id*.

In embracing a presumption in favor of within-Guidelines sentences, the *Rita* Court faced—and rejected—the objection that such a presumption might so constrain sentencing judges' discretion on the basis of judge-found facts as to deny defendants their Sixth Amendment rights as construed by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny.  See 551 U.S. at 350 (alluding to Justice Souter's dissent), *id.* at 391 (Souter, J., dissenting).  Such an objection would be at its minimum, perhaps nil, where the presumption is applied to so broad a sentencing range (and one based entirely on the offense of conviction, quite independent of judge-found facts).

Affirmatively, the *Rita* Court found a presumption of reasonableness to be proper because the trial judge and the Sentencing Commission are both directed to apply the same statutory factors, "the one, at retail, the other, at wholesale." 551 U.S. at 348.  If the trial judge's judgment falls within "the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable."  *Id*. at 351.

When the Commission specifies a broad sentencing range, that justification does not disappear—though it is of course weakened.  And the breadth in § 5D1.2(b) can be reconciled with § 3553(a)(6)'s interest in avoiding unwarranted disparities by supposing, not unreasonably, that the Commission believed either that variability among violators of § 2423(b) made a narrower range unsuitable, or that allowing considerable subjectivity among sentencing judges might (for now at least) be reasonable, or both.  See

*Rita*, 551 U.S. at 349 (acknowledging that uniformity may conflict with the goals of "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity" (emphasis omitted)).

Russell notes the existence of a Commission Policy Statement recommending that sex offenders receive the *maximum* statutory term of supervised release, U.S.S.G. § 5D1.2(b)(2) (Policy Statement), but does not challenge the effect the statement may have had (if any) in causing the district court's selection of a term close to the high end of the range. To the extent that courts, both trial and appellate, are obliged to give at least *Chevron* deference to such statements, see *United States v. Anderson*, 82 F.3d 436, 439, 442-43, 446 (D.C. Cir. 1996) (treating particular policy statement as worthy of at least *Chevron* deference), this statement's very narrow range—indeed, not a range but a point—would give Russell a stronger *Apprendi* argument vis-à-vis *Rita*'s willingness to allow courts to presume an in-Guidelines sentence to be reasonable, at least it would if the statement were triggered by judge-found facts. But he makes no arguments with reference to the Policy Statement. We thus do not address its possible vulnerability vis-à-vis *Rita*'s reasoning or the Guideline itself.

Analysis of the term of supervised release under the remaining § 3553(a) factors made applicable by § 3583(c) does not rebut the presumption established by the within-Guidelines sentence. The Policy Statement appended to U.S.S.G. § 5D1.2(b)(2), as we just noted, recommends that violators of § 2423(b) be subject to supervised release for life. Coupled with the computer restriction, to be sure, the duration of the sentence might conflict with § 3553(a)(2)(D)'s rehabilitative goals, but we analyze that restriction separately under 18 U.S.C. § 3583(d)'s criteria, which are designed

specially to govern conditions; for the reasons given below, we vacate the restriction. Given the policy statement and the relaxation of the computer restriction, the remaining § 3553(a) factors leave intact the presumption in favor of the within-Guidelines sentence. See, e.g., *Gall*, 552 U.S. at 51-52.

*Computer Restriction*. Russell's second challenge is to the special condition of his supervised release, providing that he "shall not possess or use a computer for any reason." The government and Russell agree that the 30-year prohibition on the possession and use of computers—a prohibition not subject to modification by the probation office—is substantively unreasonable. Brief for Appellee 19; Brief for Appellant 18. Despite the government's concession, the Supreme Court tells us that we are to conduct an independent review of the issue:

> The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed.

*Young v. United States*, 315 U.S. 257, 258-59 (1942); see also *Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249, 253 (1999) (per curiam) ("Although the concession of a point on appeal by respondent is by no means dispositive of a legal issue, we take it as further indication of the correctness of our decision."). While *Young* and *Roberts* involved issues of law, courts of appeals have also applied this doctrine to issues of fact. See, e.g., *United States v. Cooke*, 110 F.3d 1288, 1294 (7th Cir. 1997). We can see no basis for drawing the line at a mixed issue of law and fact. Thus, despite the tension with Article III's limitation of our jurisdiction to "cases" and "controversies," and the government's de facto power to yield in a defendant's favor by a timely exercise of its prosecutorial discretion (a tension that of course may also inhere in rules

such as those giving district courts authority to reject pleas), we proceed with our review.

Sections 3583(c) and 3583(d) govern the conditions attached to a term of supervisory release. As we have seen, § 3583(c) requires that a sentencing court, in deciding the duration and conditions of the supervised release, "consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6)." And, where such a term is imposed, 18 U.S.C. § 3583(d) specifies certain conditions and grants the district court discretion to impose additional ones, so long as each such condition:

> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C) and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994 (a).

18 U.S.C. § 3583(d). Because independent review shows that the challenged condition deprives the defendant of substantially more liberty than is "reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)," it must be vacated.

Subsections 3553(a)(2)(B) and (C) codify the penal goals of general and specific deterrence, requiring disincentives to match the severity of punishment to the harmfulness of the crime. Had the "child" been an actual minor and had Russell proceeded to have sex with her, the harm would have been great. Thus a stiff condition that deters would-be molesters and prevents Russell from reoffending may be appropriate.

This court has observed that the harm inflicted when someone uses a computer or the internet to arrange for sex with a minor is generally greater than the harm inflicted when someone uses the internet to trade child pornography. *Love*, 593 F.3d at 12. Because of the relative harm, computer and internet restrictions "while perhaps unreasonably broad for defendants who possess or distribute child pornography, may be appropriate for those who use the Internet to 'initiate or facilitate the victimization of children.'" *Id*.

Here, however, the question is not the appropriateness of an internet restriction but its form and severity. A condition that takes into account only the magnitude of the harm from defendant's offense may serve the general deterrence goals of § 3553(a)(2)(B), but may be more or less severe than required to serve § 3553(a)(2)(C)'s goal of preventing *this* defendant from repeating his offense. The sentence already achieves considerable severity by its 30-year term and several other conditions, e.g., requirements that Russell register as a sex offender in any jurisdiction where he resides and not be in the presence of anyone under the age of 18 in a private setting without another adult present.

More important for analysis under § 3583(d)(2), the computer restriction affirmatively and aggressively interferes with the goal of rehabilitation. See, e.g., *United States v. Holm*, 326 F.3d 872, 878 (7th Cir. 2003). It is hard to imagine white collar work in 2010 not requiring access to computers, just as white collar work 100 years ago would almost invariably have required the use of pens and pencils. In fact Russell's training and experience mark him not only as a white collar worker but as one at the most technically sophisticated end of the white collar distribution. He holds a Bachelors of Science degree in engineering and a Masters degree in Strategic Intelligence, see Presentence Investigation Report at 8, and his 10 years as an applied systems engineer at

Johns Hopkins suggest a work life fitted to the skills so acquired. Even a lot of blue collar work requires some computer use. Although we cannot rely on evidence developed since the sentence, it is totally unsurprising in the realities of the modern world that in his post-release search for employment Russell has evidently found that computer use is required for filling out most job applications, including those at McDonald's, as well as discharging the duties of even low tech occupations, such as keeping inventory at PETCO, and producing frames at A.C. Moore. Oral Argument Recording at 30:45-31:40. See *United States v. Voelker*, 489 F.3d 139, 148-49 (3rd Cir. 2007) (explaining that a restriction prohibiting defendant, who worked as a respiratory therapist before his arrest, from using computer equipment was overly burdensome because his employment "'necessarily entails access to and the use of computers and computer equipment for record keeping [and] patient care'"). Because the computer restriction prevents Russell from continuing in a field in which he has decades of accumulated academic and professional experience, it directly conflicts with the rehabilitative goal of sentencing. It also, of course, places a substantial burden on Russell's liberty, which under 18 U.S.C. § 3583(d)(2) must be no greater than reasonably necessary to achieve the goals of deterrence as well as rehabilitation.

The district court's restriction is scheduled to elapse more than three decades after sentencing. A provision for modification by the probation department—a minimum change suitable on remand—would allow the restriction to adjust to ongoing developments in technology and to secure a reasonable balance between the statute's rehabilitative and deterrence goals. See *Love*, 593 F.3d at 12. Given the ample room for adjusting the sentence to enable a better balance among those goals, the computer restriction in its current form is substantively unreasonable.

The government's concession, of course, is a further indication, under *Young* and *Roberts*, supporting our conclusion that the district court abused its discretion in imposing an unqualified prohibition on Russell's use of computers.

The experience of other courts also supports our conclusion. We have found only one case, *United States v. Paul*, 274 F.3d 155 (5th Cir. 2001), that upholds, against proper challenge, a categorical prohibition on computer possession or use without provision for probation office modification. Not only is *Paul* an outlier, but in key respects it represents a far stronger case for blanket restriction. Most obviously, Paul's computer restriction was to last three years, or one tenth of the duration of Russell's—a difference that makes Paul's restriction both less burdensome and less likely to become a still poorer fit over time. Moreover, Paul had suggested no way in which the computer and internet ban would adversely affect his occupational prospects, *id*. at 170, whereas Russell made clear that his rehabilitation would depend at least in part on his ability to apply his professional training, which in turn would depend on his being able to access computers. Although Paul had pled guilty only to possessing child pornography that traveled through interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B), *id*. at 158, the record showed that Paul had engaged in a sustained, extensive and sophisticated pattern of sexual predation over many years, continuously aided and magnified by the internet. He had, for example, given e-mail advice (presumably reflecting experience) on how to "find 'young friends' by scouting single, dysfunctional parents through Alcoholics Anonymous or local welfare offices and winning their friendship, thereby securing access to their young sons." *Id*. at 158. And he had a prior child pornography conviction. *Id*. Finally, of course, the computer and internet have permeated

everyday life in ways that make a restriction on their use far more burdensome than when *Paul* was decided.

We have found no instance other than *Paul* where a court has upheld a prohibition on the defendant's use of computers or the internet that was not subject to relaxation by the probation office. Many cases have upheld restrictions subject to such relaxation. *Love*, 593 F.3d at 11-13; *Sullivan*, 451 F.3d at 892-896; *United States v. Bender*, 566 F.3d 748, 751-52 (8th Cir. 2009); *United States v. Lay*, 583 F.3d 436, 449-50 (6th Cir. 2009); *United States v. Thielemann*, 575 F.3d 265, 278 (3rd Cir. 2009); *United States v. Alvarez*, 478 F.3d 864, 866-68 (8th Cir. 2007); *United States v. Johnson*, 446 F.3d 272 (2nd Cir. 2006); *United States v. Crandon*, 173 F.3d 122, 125 (3rd Cir. 1999). In several of these cases defendants' conduct was more egregious than Russell's—he had either completed sex acts with a child (*Bender*, *Alvarez*, *Johnson*, and *Crandon*), or caused another to do so in order to obtain images of the conduct (*Thielemann*), or took more drastic steps toward completion of the acts than did Russell (*Lay* (defendant flew to site of intended rendezvous after developing a ruse to separate the minor from his or her mother for the weekend)). In contrast, the courts have generated a large universe of decisions rejecting such unmodifiable restrictions, typically invoking (as here) the public interest in the defendant's rehabilitation through the productive use of his or her skills. See, e.g., *Voelker*, 489 F.3d at 144-50; *United States v. Mark*, 425 F.3d 505, 508-11 (8th Cir. 2005); *Holm*, 326 F.3d at 877-78; *United States v. Sofsky*, 287 F.3d 122, 124 (2nd Cir. 2002); *United States v. White*, 244 F.3d 1199, 1206 (10th Cir. 2001). In at least one such case, *White*, the defendant's conduct, unlike Russell's, manifested a course of completed child molestations. Cf. *United States v. Perazza-Mercado*, 553 F.3d 65, 69-74 (1st Cir. 2009) (vacating a restriction prohibiting defendant from using the internet at his home for the fifteen year period of his

supervised release, where his molestation of a nine-year old with special needs whom he supervised had not involved internet use).

## Conclusion

While we affirm the 30-year term of supervised release, we vacate the computer restriction and remand for proceedings consistent with this opinion.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring:

Although I agree with my colleagues' decisions to affirm the duration of Russell's supervised release and to remand the computer ban for refinement, I write separately to distance myself on various points. First, I do not share the majority's doubt regarding "the precedential effect," Maj. Op. at 5, of *United States v. Sullivan*, 451 F.3d 884 (D.C. Cir. 2006), and *United States v. Love*, 593 F.3d 1 (D.C. Cir. 2010). In *Sullivan*, the "Appellant urge[d] us to review the substantive validity of the [unobjected-to] terms of supervised release for abuse of discretion" but "[w]e reject[ed] this argument," holding that "[t]he proper standard of review [t]here [was] plain error." 451 F.3d at 894. Likewise, *Love* applied plain error review to four unobjected-to conditions of supervised release, twice explaining its application of that standard. 593 F.3d at 11, 14. It first relied on *United States v. Breedlove*, 204 F.3d 267 (D.C. Cir. 2000), and Fed. R. Crim. P. 52(b) in support thereof and later cited *Sullivan* to the same effect. *Id.* I do not know what else is needed to decide the scope-of-review question. Nor should *United States v. Bras*, 483 F.3d 103 (D.C. Cir. 2007), eclipse the precedential effect of *Sullivan* and *Love*. Williams Concurrence at 1-2. *Bras* did not address *Sullivan*, perhaps because *Bras* dealt with a term of imprisonment rather than conditions of supervised release. 483 F.3d at 104. And *Bras* preceded *Love*. Thus, while *Sullivan* and *Love* are distinguishable because "they do not address the applicable standard with respect to the *duration* of supervised release," Maj. Op. at 5 (emphasis added), they nevertheless remain good law regarding unobjected-to *conditions* of supervised release. And on the latter point, *Sullivan* and *Love* are of course distinguishable because Russell *did* challenge the disputed condition of supervised release at sentencing.[1]

---

[1]Regarding that condition, whether a "tension" results, Maj. Op. at 9, when, notwithstanding the government's concession, we proceed with our review is irrelevant—as the Supreme Court reminded us long

Second, I do not share my concurring colleague's faith in the isolated Justice Department data he cites. Williams Concurrence at 2-3. Those figures do not sway me. Assuming their accuracy, lower recidivism rates for sex offenders can just as easily be explained by the tight leash judges often specify for sex offenders once released from incarceration, as my colleague himself recognizes. *Id.* at 3-4.[2]

And finally, I am unwilling to subscribe to the notion that a restriction (or ban) on a criminal defendant's computer use, at least where the computer enables the crime, constitutes "a

---

ago, our duty of review is independent and mandatory, *Young v. United States*, 315 U.S. 257, 258-59 (1942); *see also United States v. Escobar Noble*, 653 F.2d 34, 36 (1st Cir. 1981) ("It is the particular function of the court, not the prosecutor, to say the last word about the justice of a sentence.").

[2]In *Love*, for example, we recognized a nation-wide move towards broad restrictions on child predators:

> Consensus is emerging among our sister circuits that Internet bans, while perhaps unreasonably broad for defendants who possess or distribute child pornography, may be appropriate for those who use the Internet to "initiate or facilitate the victimization of children." [*United States v.*] *Holm,* 326 F.3d [872, 878 (7th Cir. 2003)]; *see United States v. Thielemann,* 575 F.3d 265, 278 (3d Cir. 2009); *United States v. Johnson,* 446 F.3d 272, 283 (2d Cir. 2006); *United States v. Boston,* 494 F.3d 660, 668 (8th Cir. 2007); *United States v. Paul,* 274 F.3d 155, 169 (5th Cir. 2001). The distinction is grounded in the simple proposition that when a defendant has used the Internet to solicit sex with minors, "the hazard presented by recidivism" is greater than when the defendant has traded child pornography. *Johnson,* 446 F.3d at 283.

593 F.3d at 12.

substantial burden" on liberty, Maj. Op. at 12. A defendant convicted of vehicular homicide can permanently lose his driving privilege and the resulting ban on his use of an automobile—which, like Russell's computer, enabled the crime—does not deprive him of his liberty. That Russell's white collar career may be adversely affected by the computer ban—a result the majority supports with anecdotal predictions, Maj. Op. at 12—does not ipso facto translate into a deprivation of liberty. We can judicially note that millions of Americans every day perform jobs without using (or even seeing) a computer. If Russell cannot find a job, it is more likely because of his criminal record than the computer ban. While I do not believe the thirty-year computer ban implicates Russell's liberty, I nevertheless recognize that the weight of authority is to the contrary. For that reason, I join in the remand for the district court to again exercise its discretion in refining[3] the computer ban condition of Russell's supervised release.

---

[3]I note that, in the event the district court permits circumscribed computer use, 18 U.S.C. § 3583(d) expressly provides:

> The court may order, as an explicit condition of supervised release . . . that [Russell] submit his . . . computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion . . . and by any probation officer in the lawful discharge of the officer's supervision functions.

WILLIAMS, *Senior Circuit Judge*, concurring: I write separately to elaborate on two issues: the scope of review and the probability of recidivism.

*Scope of review*. Our opinion refers to two cases, *United States v. Sullivan*, 451 F.3d 884 (D.C. Cir. 2006), and *United States v. Love*, 593 F.3d 1 (D.C. Cir. 2010), which applied a plain error standard of review to a defendant's challenge of a discretionary condition of supervised release after he had failed to lodge an objection at sentencing. But in neither of these cases did the defendant argue or the court address whether a plain error standard of review is appropriate in the absence of an objection. The defendant in *Sullivan* "acknowledge[d] that, 'generally, where a sentencing court affords the defendant an opportunity to object to the special conditions but the defendant remains silent, an appellate court reviews for plain error'." 451 F.3d at 894 (internal brackets omitted). Of course he could not have cited our decision in *United States v. Bras*, 483 F.3d 103 (D.C. Cir. 2007), which hadn't yet issued; nor did he anticipate Bras's argument (or any others) on the background question of the need for an objection vel non. Rather, he argued that the circumstances under which the challenged condition was imposed—the trial court announced the discretionary condition "*after* resolving objections to the PSR and *after* permitting defendant to make a statement," he "ha[d] no meaningful opportunity to comment," 451 F.3d at 894 (emphasis in the original)—prevented him from making an objection. We rejected that specific argument, observing that "once appellant was made aware of the conditions . . . his counsel was in a position to respond or to seek additional time." *Id*. But we did not consider the logically anterior question whether plain error review was suitable for a substantive reasonableness challenge not posed at sentencing.

Love, appealing after *Bras* had issued, failed to invoke it; nor did he in any way raise the threshold question of whether plain error review is appropriate absent an objection. Rather, he argued that he had made an adequate objection. We rejected the argument, finding that counsel's words fell short of the specificity requirement expressed in *United States v. Breedlove*, 204 F.3d 267 (D.C. Cir. 2000). *Love*, 593 F.3d at 11.

Thus the decisions in *Sullivan* and *Love* both lacked the benefit of adversarial briefing on the issue. Neither case considered whether, as substantive reasonableness is a standard of appellate review rather than a direct mandate to trial courts, plain error review would be appropriate. *Bras*, 483 F.3d at 113. Neither case considered other arguments as to the likely impracticality of requiring an objection. See Maj. Op. at 4.

As the *Sullivan* and *Love* courts never addressed the assumption that plain error review was appropriate in the absence of an objection, the courts' implicit assumptions, under standard principles, lack precedential effect. *Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993). It remains for a future case to determine whether the standard of review applicable to a challenge of a discretionary condition as substantively unreasonable should differ from the standard applicable to terms of incarceration under *Bras*.

*Risk of recidivism*. At sentencing Russell argued that he was unlikely to repeat his offense, pointing to Department of Justice data on the recidivism rates for various types of offenders, including child molesters. The data, which Russell never mentioned in his appellate briefs, are quite interesting and seem to place child molesters at the low end of the distribution. One report, U.S. Department of Justice: Bureau of Justice Statistics, *Recidivism of Prisoners Released in 1994*

Table 10 (June 2002), available at http://bjs.ojp.usdoj.gov/ content/pub/pdf/rpr94.pdf, provides the percentage of approximately 272,111 inmates released in 1994 in 15 states who were rearrested within three years of release for the type of crime for which he/she was imprisoned, namely, homicide, rape, robbery, assault, burglary, larceny/theft, motor vehicle theft, fraud, drug offenses, and public order offenses. The numbers for those categories are, respectively, 1.2, 2.5, 13.4, 22.0, 23.4, 33.9, 11.5, 19.0 , 41.2 and 31.2 percent. But another report, Bureau of Justice Statistics, *Recidivism of Sex Offenders Released from Prison in 1994* Table 22 (Nov. 2003), available at http://bjs.ojp.usdoj.gov/content/ pub/pdf/rsorp94.pdf, shows the analogous rates of recidivism for child molesters to be lower than all but two categories of that set of offenders, and radically lower than most. It reports that of the 4,295 inmates convicted of child molestation who were released in 1994, only 5.1 percent were rearrested for any sex crime within three years.

The DOJ statistics also have implications for Russell's age and his lack of prior offenses. The rearrest rate for child molesters with no arrests prior to the one leading to their imprisonment was about half that for those with a prior arrest for any crime. See *id.* at Table 28. And the rearrest rate for persons 45 or over was only about 60 percent of the average rate. See *id.* at Table 25.

On appeal Russell does not argue that the sentencing court committed the procedural error of relying on erroneous facts when assessing the risk of recidivism, *Gall v. United States*, 552 U.S. 38, 51 (2007), let alone raise the Justice Department statistics, thereby depriving the government of a chance to argue why the data may not be as telling as they appear. It may be, for example, that assiduous supervision under judgments such as the one under review, as well as general legislation constraining the offenders' movement and

4

sensitizing neighbors (e.g., the various versions of Megan's Law adopted by every state and by Congress by 1996, see *Smith v. Doe*, 538 U.S. 84, 89-90 (2003)), have played a key role in producing the low rates shown in DOJ's statistics.

In any event, given Russell's failure to press the Justice Department figures, the other applicable § 3553(a) factors and the deference owed to the trial court, see, e.g., *Gall*, 552 U.S. at 51-52, I am unable to find the 30-year term of supervised release to be substantively unreasonable.