Opinion for the Court filed by Senior Circuit Judge WILLIAMS.
Dissenting opinion filed by Circuit Judge KAVANAUGH.
WILLIAMS, Senior Circuit Judge:
Tom Lusuli Malenya, a 41-year-old Army nurse, posted a personal ad on the “Men Seeking Men” section of Craig-slist.com. D.R., who was 14 at the time, responded to Malenya’s ad by e-mail and claimed to be an 18-year-old “twink”— someone who appears to be younger but who is actually an adult male between the ages of 18 and 23. Via text message, Malenya arranged for D.R. to come to his apartment, and the two had sex. A few weeks later, D.R.’s mother became concerned about the nature of D.R.’s relationship with Malenya and contacted the police. Using D.R.’s phone and pretending to be D.R., a detective sent a text message giving Malenya D.R.’s actual age and saying, “If your [sic] not cool its [sic] ok.” Malenya responded, via text message, “As long as you do not tell anyone is [sic] cool.” In another exchange of text messages the next day, Malenya arranged a second meeting at his apartment with D.R., and was arrested when a detective turned up instead of D.R.
In an information filed in the United States District Court for the District of Columbia, the United States charged Mal-enya with violations of 18 U.S.C. § 2422(b) and D.C.Code § 22-3010.02. Pursuant to a plea agreement, Malenya pled guilty to the D.C.Code violation. The court sentenced Malenya to a 36-month term of incarceration, suspended all but a year and a day, and imposed a 36-month term of supervised release subject to several special conditions. After sentencing, the government moved to dismiss the federal charge, and the court granted the motion.
Malenya’s objections to the conditions of supervised release are the sole merits subjects before us. We first address a couple of preliminary issues. On the merits, we find that the district court’s own statements, and the sweeping nature of several of the conditions, demonstrate that the court failed to weigh the burden of the conditions on Malenya’s liberty against their likely effectiveness, as required by 18 U.S.C. § 3583(d). We vacate the challenged conditions and remand the case to the district court to impose alternative conditions consistent with the governing statute.
Congress has granted the United States District Court for the District of Columbia jurisdiction over “[a]ny offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense.” District of Columbia Court Reorganization Act of 1970, Pub.L. No. 91-358, title I, § 111, 84 Stat. 477, 478 (codified at D.C.Code § 11-502). The information here included both the federal offense and D.C.Code violation, so the district court had jurisdiction over the latter.
Disposition of the federal offense after proper joinder does not withdraw power over the local offense, United States v. Kember, 685 F.2d 451, 454 (D.C.Cir.1982), but “when federal charges have faded from the case prior to trial,” the court has discretion to divest itself of jurisdiction, reviewable for abuse of discretion, id. at 454, 455. Due to variations in procedure and substance between the two systems, some hesitance to retain jurisdiction over a properly joined D.C.Code offense is in order once the federal charges have *557 “faded from the case.” Malenya, however, has not argued that the district court abused its discretion, and, because retention of a D.C.Code violation would not affect the district court’s power to hear the case even where retention of the case was an abuse of discretion, see id. at 454 (citing United States v. Kember, 648 F.2d 1354, 1359 (D.C.Cir.1980) (per curiam)), we need not raise the issue on our own.
In a footnote to its brief the government noted that § 11-502(3) does not explicitly address the district court’s attachment of conditions to a term of supervised release. Govt. Br. 16-17 n. 8. The government also pointed out that while in criminal cases in D.C. Superior Court the trial court sets the duration of any supervised release, it is the U.S. Parole Commission that imposes any conditions on that release. Compare D.C.Code § 24-403.01(b)(l-4) (duration), with D.C.Code § 24-403.01(b)(6) (conditions). We ordered the parties to brief the matter, and Malenya, while conceding that the district court could impose a sentence, including a term of supervised release, argued that its attachment of any conditions was error.
Given § ll-502(3)’s explicit grant of “jurisdiction of ... [a]ny offense under any law applicable exclusively to the District of Columbia” (so long as the joinder requirement has been met) (emphasis added), there seems little basis for any claim that the district court exceeded its jurisdiction in imposing conditions on supervised release. Accordingly, the issue is subject to normal rules of forfeiture. See United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). As Malenya didn’t raise the issue until prompted by the government’s brief and our order, our review is only for “plain error” under Rule 52(b) of the Federal Rules of Criminal Procedure.
The error, if any, falls far short of satisfying the component of plain error review requiring that the error have been “clear or obvious, rather than subject to reasonable dispute.” Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). The propriety of the district court’s sentencing Malenya at all must be inferred from the general grant of jurisdiction in D.C.Code § 11-502(3),. and, as defense counsel acknowledged, the same is true even for the court’s imposing a term of supervised release. Thus any claim that the- court’s imposition of conditions on that supervised' release is improper seems at least subject to reasonable dispute. Moreover, reading § 11-502(3) to allow the district court to attach conditions has the. appeal of avoiding the peculiar result that no one can impose conditions on the supervised release of a defendant sentenced under § 11^502(3). Finding the supposed error not to be clear enough to qualify as plain error, we will not review Malenya’s forfeited claim.
We start our review of the challenged conditions by setting them forth, as stated by the district court at sentencing, adding bracketed headings for convenience.
[Computer/intémet access.] [Y]ou shall not possess or use a computer or have access to any on-line service without the prior approval of the United States Probation Office; you shall identify all computer systems, Internet capable devices, and similar memory and electronic devices to which you have access, and allow installation of a computer and Internet-monitoring program.
You are limited to possessing only one personal Internet capable device. Monitoring may include random examinations of computer systems, along with Internet, electronic, and media storage devices under your control. The computer *558 system or device may be removed for a more thorough examination, if necessary. You shall be responsible for the costs of such monitoring services.
[iComputer pornography access.] You shall not use a computer, Internet capable device, or similar electronic device to access pornography of any kind. This includes but is not limited to accessing pornographic web sites, including web sites depicting images of nude adults or minors. You shall not use your computer to view pornography stored on related computer media such as CDs or DVDs, and shall not communicate via your computer with any individual or group who promotes the sexual abuse of children.
[Preclusion of contact with minors.] You shall have no direct contact with minors under the age of 18 without the written approval of the probation officer, and shall refrain from entering into any area where children frequently congregate, including but not limited to schools, day care centers, theme parks, theatres, playgrounds, shopping malls, swimming areas, community recreation centers, and arcades.
[Preclusion of contact with minors in employment, or volunteer work] You shall not be employed in any capacity that may cause you to come into direct contact with children, except under circumstances approved in advance by the supervisory probation officer. You shall not participate in any volunteer activity that may cause you to come in direct contact with children, except under those circumstance [sic] approved in advance by your probation officer.
[Required sex offender treatment.] You shall participate in the program of sex offender assessment and treatment as directed by the probation officer until such time as you are released from the program. This assessment and treatment may include physiological testing, such as polygraph, to assist in planning, case monitoring, and supervision. At the direction of the probation officer, you shall pay for all or a portion of any treatment program. Any refusal to submit to such assessment or tests as scheduled is a violation of the conditions of release.
You shall waive your right of confidentiality in treatment, and sign any necessary releases for any records imposed as a consequence of this judgment to allow the supervisory probation officer to review your course of treatment and progress with the treatment providers.
[Physiological testing condition.] You shall submit to penile plethysmograph testing as directed by the United States Probation Office as part of your sex offender therapeutic treatment. The costs of that testing are to be paid by you as directed by the probation office.
[Limits on places of residence, employment and volunteering.'] You shall have all residences, employment, and volunteer work preapproved by the U.S. Probation Office. Your residence may not be in close proximity to locations frequented by children such as schools, playgrounds, public pools, and video galleries. You shall neither reside in a residence where minor children also reside, nor shall you work or volunteer for any business or organization that provides services or employs persons under 18 years of age without the permission of the U.S. Probation Office.
.... [Romantic relationship limit.] You shall notify the U.S. Probation Office when you establish a significant romantic relationship, and shall then inform the other party of your prior criminal history concerning your sex of *559 fenses. You understand that you must notify the U.S. Probation Office of that significant other’s address, age, and where the individual may be contacted.
The government argues that plain error review should apply to two of the conditions — the computer pornography prohibition and the restriction on employment or volunteer work involving minors. This is incorrect. The Presentence Investigation Report (“PSR”) identified both of these as suggested conditions for supervised release. Defense counsel responded with a brief that quoted § 3583(d)’s insistence that any imposed condition “involves no greater deprivation of liberty than is reasonably necessary” for the various sentencing goals set out in cross-referenced provisions. Counsel then asserted that all of the conditions set out in the PSR, except two not at issue in this appeal, were not “reasonably related to this case and all involve a greater deprivation of liberty than is reasonably necessary.”
This objection both identified the conditions to which Malenya objected and the grounds on which he objected. Cf. United States v. Love, 593 F.3d 1, 11 (D.C.Cir.2010). Malenya thus gave the court ample opportunity to avoid error by considering the mandate of § 3583(d). See Fed. R.Crim.P. 51(b). Our review of the challenged conditions is for abuse of discretion. Love, 593 F.3d at 11. In such a review we ask “whether the district court considered the prescribed factors and clearly articulated their effect on its decision.” United States v. Wright, 6 F.3d 811, 813 (D.C.Cir.1993). Failure to apply the correct legal standard itself constitutes an abuse of discretion. Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C.Cir.2011).
By statute the district court may impose conditions of supervised release (other than certain mandatory ones) if the conditions are “reasonably related” to factors set forth in 18 U.S.C. § 3553 and “involve[] no greater deprivation of liberty than is reasonably necessary for the purposes” identified in, that section. 18 U.S.C. § 3583(d)(1), (2).
The statute identifies the permissible purposes by means of complex cross-references, but the Sentencing Commission has restated those purposes by providing that the conditions must be
reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
U.S. Sentencing Guidelines Manual § 5D1.3(b). The Guidelines of course also repeat the statute’s requirement that conditions must involve “no greater deprivation of liberty than is reasonably necessary.” Id. The court therefore must not only find the condition to be reasonably related to Congress’s goals as related to the defendant but must weigh the consequences for the defendant’s liberty against any likely achievement of the statutory purposes. Though “reasonably necessary” may be quite vague in many legal contexts, see Dissent at 2, here it is tethered to deprivation of liberty in terms that in effect require the court to choose the least restrictive alternative. Section 3583(d)(2) is thus, as the Seventh Circuit put it, a “narrow tailoring requirement.” United States v. Holm, 326 F.3d 872, 877 (7th Cir.2003); see also United States v. Peraz-za-Mercado, 553 F.3d 65, 73 (1st Cir.2009); *560 United States v. Voelker, 489 F.3d 139, 144-45 (3d Cir.2007).
The court’s characterization of the conditions imposed was quite inconsistent with the statutorily required consideration of Malenya’s liberty. First, it justified them as “the standard conditions that are imposed in these cases,” thus wrapping the case before it into a cluster of “these cases” — cases whose distinguishing features it did not delineate. Further, the court explained that the conditions were reasonably necessary to “minimize the risk” of re-offense, a formulation that ignores the balancing of goals against the defendant’s liberty, as required by § 3583(d)(2). Nor was the implicit rejection of balancing in this language corrected or offset by any indication of balancing elsewhere in the court’s discussion.
The limit on computer/internet access illustrates the failure to consider the consequences of the conditions. Its key phrase says that “you [Malenya] shall not possess or use a computer or have access to any on-line service without the prior approval of the United States Probation Office ... and [shall] allow installation of a computer and Internet-monitoring program.”
We have often noted the ubiquity of computers in modern society and their es-sentialness for myriad types of employment. See, e.g., United States v. Russell, 600 F.3d 631, 637 (D.C.Cir.2010). Given the need to use a computer to apply for a job at McDonald’s, id., it seems likely that full-bore enforcement would shrink Mal-enya’s employment opportunities to the vanishing point. And even if he secured probation office approval for use of the computer systems in his chosen vocation of medicine, the monitoring requirement appears inconsistent with medical privacy requirements. Quite apart from employment, the internet provides, as we noted in another decision, “the easiest way to pay ... bills, check the weather, stay on top of world events, and keep in touch with friends.” Love, 593 F.3d at 12. A ban on computer and internet usage, qualified only by the possibility of probation office approval, is obviously a significant deprivation of liberty.
Implicitly the government suggests that this significant deprivation of liberty is no more than is “reasonably necessary” for the purposes referred to in § 3583(d)(2). The government contends that the deprivation is reasonably necessary because but for the internet, Malenya would not have met his victim. But this alone cannot be enough to justify such a deprivation of liberty. If it were, district courts could impose bans on reading newspapers if a defendant met his victim through the wanted ads, or ban the wearing of eyeglasses if a defendant first saw the victim through corrective lenses. Because the net is so novel, powerful and protean, it may seem to have a kind of magic. But pen, paper and literacy (or at least their widespread availability) once enjoyed all three characteristics, yet we would laugh at criminologists who advocated banning access for prisoners who had served their term.
When challenged as to its but-for causation argument, the government argued that Malenya’s use of the internet to seek a sexual relationship with an adult demonstrated that he might use the internet to seek sex with children. But this rationale is similarly unavailing. We explained in United States v. Burroughs, 613 F.3d 233, 243 (D.C.Cir.2010), that the mere possibility that “the Internet can be used to arrange sexual encounters with minors” is inadequate to justify an internet restriction. It is unclear if any computer or internet restriction could be justified in Malenya’s case, but the condition in its
*561 current form is surely a greater deprivation of liberty than is reasonably necessary to achieve the goals referenced in § 3583(d). Cf. United States v. McLau-rin, 731 F.3d 258, 262 (2d Cir.2013).
The pornography restriction also illustrates the district court’s failure to consider the appropriateness of the probation office’s proposed conditions. The district court may have been within reason to restrict a child sex offender’s access to child pornography, which is of course already illegal, see, e.g., 18 U.S.C. § 2252A. But the record contains no evidence either that Malenya indulged in adult or child pornography, or that viewing adult pornography would increase the likelihood that he would again indulge in sex with non-adults— which, after all, he did not seek out in this case. With no evidence of a need for the restriction, it appears to be a more significant deprivation of liberty than is reasonably necessary. See Perazzcu-Mercado, 553 F.3d at 75-76, 78 (vacating an adult pornography restriction as plain error when the district court gave no explanation for the condition and no discernible evidence in the record justified the ban).
Finally, the vague language and vast scope of the contact and residential conditions demonstrate the district court’s failure to consider the effect of the imposed conditions on Malenya’s liberty. The restrictions not only prevent Malenya from intentionally interacting directly with children, which could potentially be justified, but also prevent him from participating in many activities of everyday American life, activities that Malenya is not shown to have abused. For instance, a reasonable reading of the contact ■ restriction would prevent Malenya from entering a shopping mall or going to a movie, even one that children cannot attend, for three years. Moreover, use of vague language like “close proximity” and “frequently congregate” gives the probation office the power to prevent Malenya from living almost anywhere and going to almost any place.
This significant deprivation of liberty might be justified in a case where an offender has frequented such locations for the purpose of preying on children, or has shown a pathological attraction to children. Here there is no evidence of such behavior. In fact, the evidence that Malenya is attracted to children per se is ambiguous and seems to place him in a category fitting neither the government’s nor defendant’s characterization. While he never (so far as appears) sought a sexual encounter with anyone underage, he did persist in his plans here even after learning that D.R. was only 14; neither his preferences nor his ethics called a halt.
We pause to consider the thought that the district court may have substituted stringency of conditions for time in prison. See Dissent at 5-6. Such a trade-off is obviously conceivable. But in addressing the character of conditions, § 3583(d)(2) introduces the goal of minimizing the deprivation of liberty and thus the narrow tailoring requirement considered earlier, making the execution of such a trade-off distinctly awkward. Further, in placing a defendant on supervised release, the court has necessarily determined that the goals of sentencing would at that point be better served by putting the defendant at liberty (albeit a constrained liberty), a shift that inherently seems to increase the weight due to rehabilitative goals over those of retribution, deterrence and incapacitation. Whatever the merits of the view that a court may trade off the duration of prison and supervised release, see United States v. Albertson, 645 F.3d 191, 198 (3d Cir.2011), trading off duration of sentence for stringency of conditions may prove to be a difficult practical exercise. As the district court here gave no hint of making such a *562 trade-off, we need not consider whether it would have complied with the statute.
Since the district court did not apply the correct standard for imposing conditions of supervised release, we vacate all the challenged conditions and remand to the district court to impose special conditions of supervised release in compliance with § 3583(d).

So ordered.