# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 22, 2016       Decided July 18, 2017

No. 12-3032

UNITED STATES OF AMERICA,
APPELLEE

v.

BRANDON J. ROCK,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cr-00376-1)

*Jonathan S. Jeffress*, Assistant Federal Public Defender, argued the cause for appellant. With him on the brief was *A.J. Kramer*, Federal Public Defender.

*Karen P. Seifert*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief was *Elizabeth Trosman*, Assistant U.S. Attorney. *Lauren R. Bates*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and MILLETT, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Appellant Brandon Rock was sentenced to 172 months' imprisonment and 10 years of supervised release after pleading guilty to distribution of child pornography. He appeals the length of his sentence and the conditions of his supervised release. For the reasons stated below, we affirm his sentence length but vacate two of the release conditions.

## BACKGROUND

Prior to June 2011, appellant Brandon Rock was involved in a romantic relationship with a woman who had an 11-year-old daughter. Rock installed a hidden camera in the child's bedroom at the woman's house. Over the course of six months, Rock captured numerous video segments of the child in her bedroom, some of which showed the child completely naked from the front and back. From these videos Rock made still pornographic images. Subsequently, Rock entered an internet chat room where, unbeknownst to him, he began communicating with undercover Metropolitan Police Department Detective Timothy Palchak. Palchak was posing as an individual who had access to a fictional 12-year-old girl. Rock told Palchak about his camera recordings and sent several of the still images to Palchak. Rock also sent Palchak 11 image files, 6 or 7 of which showed children in sexually explicit poses. During these chats, Rock expressed interest in having sex with the fictional 12-year-old and openly solicited Detective Palchak's rape of the 12-year-old by offering to pay Palchak with more images of child pornography if Palchak would let him watch the assault. On June 17, 2011, Rock was arrested at his home. His computers were confiscated. On these computers were more than 100 videos containing child pornography.

Rock pled guilty in district court to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2).

The parties agreed to a sentencing range of between 144 and 180 months' imprisonment. Rock was sentenced to 172 months' imprisonment and 10 years' supervised release.

Rock now appeals the length of his sentence and the special conditions attached to his supervised release.

## LENGTH OF SENTENCING

First, Rock argues that his sentence was procedurally unreasonable because the district court expressly relied on the incorrect premise that child pornography offenses involve a greater rate of recidivism. According to Rock, the district court, when deciding on its 172 months' sentence, relied on a comment it made during sentencing concerning a higher rate of recidivism for child pornography offenders. Rock argues that this proposition articulated by the district court has been disproved time and again, including in a definitive study conducted by the United States Sentencing Commission. Citing *United States v. Lemon*, 723 F.2d 922, 933 (D.C. Cir. 1983), Rock argues that where, as here, the district court has relied on incorrect information in imposing a sentence, the appropriate course is to remand for re-sentencing. In response, the government acknowledges that at the close of the sentencing hearing, in explaining the basis for Rock's sentence, the court recognized that the type of crime here "is so hard to know about and so easy to do again and again." But, argues the government, the district court promptly qualified its remark by noting that recidivism is very hard to predict in this kind of crime. The government argues that, consequently, the district court's recidivism concerns were wholly independent of statistical recidivism data, and this court should decline to construe the district court's single statement as evidence that the district court relied on recidivism rates at all in imposing Rock's sentence.

The government goes on to argue that even if the district court had so relied, there is no basis to conclude that the district court relied on misinformation. According to the government, in its sentencing memorandum the prosecution cited numerous studies showing that as many as 9.5 percent of child pornography offenders re-offended within 6 years. And even if the district court had relied on misinformation, argues the government, Rock has not shown, or even argued, that such reliance had any impact on Rock's sentencing range.

We agree with the government that the district court's recidivism comment was only that—a comment—and appears to have had no influence on the length of imprisonment to which Rock was sentenced.

Second, Rock argues that his sentence was procedurally unreasonable because the government falsely represented that Rock did not attempt sexual abuse of the fictitious 12-year-old only because he was arrested first. According to Rock, he and the government disagreed in their sentencing memoranda as to why Rock did not attempt sexual abuse of the fictitious 12-year-old. Rock states that his memorandum noted that he ceased engaging with Detective Palchak before any such abuse could take place, while the government's memorandum claimed that no abuse took place because Rock was arrested first. Relying principally on *United States v. Bigley*, 786 F.3d 11, 12 (D.C. Cir. 2015) (per curiam), Rock argues that it was error for the district court not to resolve this dispute. Furthermore, Rock argues, there was a significant possibility that the information provided by the government was false and infected the district court's sentencing decision. Rock argues that consequently this court should remand for re-sentencing. The government agrees that the district court did not specifically resolve the dispute between the parties regarding why Rock stopped his contact with Palchak.

But the government notes that the district court found that, regardless of Palchak's actions, Rock was doing more than just looking at child pornography; he was in fact victimizing his girlfriend's child. Relying principally on *Rita v. United States*, 551 U.S. 338, 356 (2007), the government argues that although the district court did not resolve the dispute, the court need not issue a full opinion, especially where, as here, the court found Rock's ultimate argument insufficient. The government further argues that Rock has not shown that the district court's failure to resolve the parties' disagreement impacted his sentence in any way. Finally, the government argues that in any event the district court's statements at sentencing show that it partly based Rock's sentence on his conduct, i.e., secretly taping the child and then distributing it over the internet.

We agree with the government that under our precedent the district court need not resolve all disputes between the parties. *See United States v. Locke*, 664 F.3d 353, 357-58 (D.C. Cir. 2011). Here, although Rock argues that he forcefully put forward the reason-for-quitting issue in the district court, we conclude that a reading of the sentencing hearing transcript reveals that the sentencing judge did not find the issue relevant to its reasons for imposition of its sentence.

## CONDITIONS OF SUPERVISED RELEASE

At sentencing, the district court imposed several conditions of supervised release on Rock once he was released from prison. Rock contends that these conditions are not reasonably related to his offense conduct and involve a greater deprivation of liberty than is reasonably necessary under the facts and circumstances of this case, as required by 18 U.S.C. § 3583(d). We observe at the outset that with the exception of a condition concerning "significant romantic relationships," we review these conditions for plain error, the defendant not having preserved

them in the district court.  *United States v. Love*, 593 F.3d 1, 11 (D.C. Cir. 2010).  In that context, we further observe that appellant's general objection to all conditions was "insufficient" to preserve the arguments for our review.  *See id.*

One supervised release term prohibits Rock from possessing or using a computer, or having access to any online service, without the prior approval of the probation office.  Rock argues that this broad computer/internet restriction is at odds with this court's opinion in *United States v. Malenya*, 736 F.3d 554 (D.C. Cir. 2013).  According to Rock, in that case this court struck down precisely the same condition imposed here on the ground that it violated § 3583(d).  *See id.* at 559-61.  Rock argues that such a computer restriction will, among other things, unreasonably limit his ability to work, and therefore negatively impact his rehabilitation, a goal of supervised release.  The government counters that this court in *United States v. Legg*, 713 F.3d 1129, 1132-33 (D.C. Cir. 2013), upheld an almost identical internet restriction where the defendant used the internet to facilitate his crime.  Furthermore, argues the government, in *United States v. Accardi*, 669 F.3d 340, 347-48 (D.C. Cir. 2012), this court found no plain error in imposing a qualified internet ban where the defendant used a computer for distribution of child pornography.  We find no plain error in the imposition of the internet-access condition given that we upheld an analogous condition in *Love*, 593 F.3d at 159-61.  We also have upheld conditions analogous or even identical to this repeatedly on plain error review.  *See Legg*, 713 F.3d at 1131-33; *Accardi*, 669 F.3d at 348; *United States v. Laureys*, 653 F.3d 27, 35 (D.C. Cir. 2011); *United States v. Sullivan*, 451 F.3d 884, 896 (D.D. Cir. 2006).

The Supreme Court's recent decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), does not make the error plain because Rock's condition is imposed as part of his

supervised-release sentence, and is not a post-custodial restriction of the sort imposed on Packingham, 137 S. Ct. at 1734, 1736.  *Cf. United States v. Knights*, 534 U.S. 112, 119 (2001) (individuals on probation "'do not enjoy the absolute liberty to which every citizen is entitled,'" and "a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987))).

Relatedly, another supervised release condition states that Rock "shall not use a computer, internet capable device, or similar electronic device to access pornography of any kind." Rock argues that this computer pornography restriction is unnecessary because the district court imposed this condition in the absence of any evidence demonstrating that viewing adult pornography would increase Rock's likelihood of re-offending. Citing *United States v. Loy*, 237 F.3d 251 (3d Cir. 2001), Rock further argues that the condition suffers from being unconstitutionally vague and overly broad.  The government responds that the district court did not plainly err by imposing conditions on Rock's access to pornography.  In support of this argument, the government cites *United States v. Laureys*, 653 F.3d 27 (D.C. Cir. 2011), and *United States v. Love*, 593 F.3d 1 (D.C. Cir. 2010), in which, according to the government, this court found no plain error regarding similar bans on possession of any pornography in cases involving child pornography possession and distribution.

Each of the cases cited by the parties involved sentences for convictions of offenses similar to those in the present case. Each involved conditions in some ways similar to those imposed on Rock.  And while each of the cases cited by the parties is in some fashion distinguishable from the present controversy, *Love* is the most instructive.  In *Love*, we held overbroad a written expansion of the district court's oral sentence which restricted

a defendant's access to all pornography, including legal adult pornography, as well as illegal child pornography. 593 F.3d at 10-11. However, our judgment in that case remanded the sentence to the district court for restoration of its oral sentence, which was closer to the judgment imposed in this case. *See id.* at 11, 14; *see also Laureys*, 653 F.3d at 35 (noting the "connection between pornography and sex crimes"). Moreover, limiting Rock's ability to access pornography on the internet is directly related to the conduct that led to his conviction–namely, using his computer to distribute child pornography. Based on the nature of the offense, we cannot agree with Rock that the ban on possession of pornography on a computer is arbitrary. Thus, unlike *Loy*, upon which Rock relies, this condition is "narrowly tailored and directly related to the goals of protecting the public and promoting [the defendant's] rehabilitation." *Cf. Loy*, 237 F.3d at 264 (citation and internal quotation marks omitted). As in *Love*, the condition imposed upon Rock is not vague and is not unconstitutional.

Another imposed condition of supervised release, the only preserved objection in the district court, under the heading "Additional Standard Conditions of Supervision," states that Rock "shall notify the U.S. Probation Office when he establishes a significant romantic relationship and then shall inform the other party of his prior criminal history concerning the sex offenses." Rock argues that this condition should be vacated because such a condition is unconstitutionally vague, not reasonably related to the goals of sentencing, and constitutes a greater restriction on liberty than necessary.

In reply, the government argues that the district court did not abuse its discretion in ordering that Rock notify the probation office of any significant romantic relationship. The government contends that the condition reasonably relates to the facts of the case because Rock expressly used his significant

romantic relationship with his girlfriend to prey on her daughter. The government further argues that the condition is not vague because people of common intelligence understand what "significant romantic relationship" means. If the court disagrees with this assessment, the government argues, it should remand in order to give the district court the opportunity to define the term significant romantic relationship in a way that would eliminate the vagueness objection.

We cannot agree with the government's proposition that people of common intelligence would share a conclusion as to whether the affairs of two people constituted a "significant romantic relationship." Indeed, we think it likely that in many cases, the two persons involved might not agree as to whether they had such a relationship. In short, we agree with Rock that the vagueness of this condition is problematic. In *Malenya*, the same condition was imposed upon a defendant. *See* 736 F.3d at 558-59; *see also id.* at 563 n.1 (Kavanaugh, J., dissenting). Although in that case we did not specifically address this condition, we vacated all of the conditions imposed because the district court had not applied the correct standard for imposing its conditions of supervised release. *Id.* at 556, 562. We note that one of our sister circuits has held that such a condition was unconstitutionally vague. *See United States v. Reeves*, 591 F.3d 77, 81 (2d Cir. 2010). We agree and order the condition vacated.

Another condition of supervised release imposed upon Rock is that he "shall submit to penile plethysmograph testing as directed by the United States probation office as part of your sexual offender therapeutic treatment." Rock contends that when the district court ordered him to submit to penile plethysmograph, there was no demonstration of what such testing actually required or if it is effective, and no discussion of

why it is necessary.[1]  Again, the same condition of supervised release was imposed in *Malenya*.  As noted above, although we vacated this condition (along with all of the other challenged release conditions), we did not specifically address it, other than to hold that the district court did not apply the correct standard for imposing conditions of supervised release.  *See Malenya*, 736 F.3d at 556, 562.  We note, however, that a dissenting judge would have upheld all the conditions except penile plethysmograph testing, because in his view the district court had not erred in its procedure.  *See id.* at 562, 566 (Kavanaugh, J., dissenting).  The dissenter would have stricken the penile plethysmograph testing condition on the grounds that the procedure "implicates significant liberty interests and would require, at a minimum, a more substantial justification than other typical conditions of supervised release."  *Id.* at 566.  We agree with the *Malenya* dissent and order this condition vacated as well.  *See United States v. McLaurin*, 731 F.3d 258, 260 (2d Cir. 2013) (holding a penile plethysmograph testing condition unconstitutional as violative of due process).

The parties make further arguments, none of which warrant separate discussion.

---

[1]The government responds that it is not clear that Rock will ever be subject to penile plethysmograph testing in 2026 or thereafter, and his challenge is therefore unripe.  But supervisory conditions are ordinarily ripe for challenge upon imposition, especially when as here the argument presents a purely legal issue requiring no further factual development and this court's ruling will provide Rock with "an immediate, concrete, and valuable benefit: certainty" regarding whether he will have to face such testing.  *VanderKam v. VanderKam*, 776 F.3d 883, 889 (D.C. Cir. 2015).

## CONCLUSION

For the reasons stated above, we affirm Rock's 172 months' imprisonment.  However, we vacate two of the imposed supervised release conditions: subjection to penile plethysmograph testing; and notification to the probation office of any significant romantic relationship in which he may become involved.

*So ordered.*